James C. PLEDGER, Commissioner of Revenues, State of Arkansas *v.* EASCO HAND TOOLS, INC.

90-139                                                     800 S.W.2d 690

Supreme Court of Arkansas
Opinion delivered December 3, 1990
[Rehearing denied January 14, 1991.*]

*Hays, J., would grant rehearing. Corbin and Brown, JJ., not participating.

48

*John Theis, Philip Raia, Robert L. Jones, William Keadle, Cora Gentry, David Kaufman, Malcolm Bobo,* and *Beth B. Carson,* by: *Rick L. Pruett,* for appellant.

*Cypert, Crouch, Clark & Harwell,* by: *Charles L. Harwell,* for appellee.

DALE PRICE, Justice. This is a use tax case in which the appellant appeals from an adverse decision finding the appellee was entitled to an exemption. Three points are relied upon for reversal. We find no merit to any of these issues and affirm.

The appellee, EASCO Hand Tools, Inc. (EASCO), has operated a manufacturing plant in Springdale, Arkansas, in excess of twenty years. EASCO's wrenches and hand tools are sold throughout the United States as well as foreign countries. In the early 1980's, EASCO, faced with foreign competition, expanded its plant operations to increase efficiency in its manufacturing process. In 1985 a Computer-Aided Design/Computer-Aided Manufacturing (CAD/CAM) system was purchased out of state for $793,674.41. An audit was performed by appellant Arkansas Commissioner of Revenues (Commissioner), and EASCO was subsequently assessed use tax for unreported purchases of office supplies, repair parts, die block material, machinery and equipment. The assessment was litigated before the Commissioner's Office of Hearing and Appeals, resulting in an administrative decision upholding the assessment of tax, penalty and interest. EASCO appealed and the case was submitted to the trial court upon stipulations of facts and law together with supporting briefs. The trial court specifically found EASCO established its entitlement to an exemption from use tax on the purchase of the CAD/CAM system and die block materials

beyond a reasonable doubt.

The Commissioner first alleges the chancellor erred in finding EASCO was entitled to the machinery and equipment exemption. Entitlement to the exemption will be upheld if EASCO established beyond doubt its CAD/CAM system was used directly in its manufacturing process, creating an "article of commerce." In addition, the system had to have been purchased by EASCO in order to create an expansion of its existing facilities. Ark. Code Ann. § 26-53-114 (1987).

The CAD/CAM system consists of a main frame computer, four terminals and milling machines for the plant. The milling machines are connected to the computer by cable. The die used in the manufacturing process determines the shape of the tools, the "articles of commerce" produced by EASCO. The dies are formed on site by the CAD/CAM system to strict tolerances, and the physical characteristics of the hand tools are determined from these dies. The dies are placed in stamping machines to produce the finished hand tools. The system can retool dies as they become worn and provides the specifications for quality control. As a direct result of its purchase of the CAD/CAM system, EASCO's die cost per wrench dropped significantly and the number of persons employed in the plan increased substantially.

The Commissioner argues the system is used to make a die which in turn is used to make an "article of commerce" and, therefore, is not used directly in the manufacturing process. It is pointed out that the "articles of commerce" manufactured by EASCO are wrenches and hand tools, not dies and molds. In other words, the CAD/CAM system is an integral part of the manufacture of dies and molds and not an integral part of the manufacturing process.

In a lengthy and detailed memorandum opinion, the trial court found EASCO had met the requirements of Ark. Code Ann. § 26-53-114. The court stated that the CAD/CAM system performed an essential function directly in the manufacture of tools. It further found the system's function, designing and manufacturing, directly pertained to the dies, and the dies shaped the wrenches and hand tools which were the "articles of commerce."

It is well settled that a presumption exists in favor of the taxing power of the state, and a taxpayer has the burden of establishing the right to an exemption beyond a reasonable doubt. *Ragland* v. *General Tire & Rubber Co.*, 297 Ark. 394, 763 S.W.2d 70 (1989). Tax exemptions must be strictly construed against exemption, and to doubt is to deny the exemption. *Ragland* v. *Dumas*, 292 Ark. 515, 732 S.W.2d 118 (1987). We review such cases de novo and do not set aside the findings of the chancellor unless they are clearly erroneous. *Southern Steel & Wire Co.* v. *Wooten*, 276 Ark. 37, 631 S.W.2d 835 (1982). Under the specific facts of this case, we cannot say the chancellor's finding that EASCO's CAD/CAM system was exempt from use tax is clearly erroneous.

The Commissioner next alleges the chancellor erred in applying an "economically essential" test to determine if EASCO was entitled to an exemption on its CAD/CAM system. In this regard, the Commissioner states the trial court improperly determined EASCO's manufacturing operation would cease if the CAD/CAM system were removed and based this determination upon competition and cost factors. Although the trial court referred to the economic results of removing the CAD/CAM system from EASCO's manufacturing process in its opinion, we do not view its remarks as applying an economic test in finding that EASCO's CAD/CAM system was used directly in its manufacturing process. The trial court noted the die work could not be obtained from any other facility in the state, and specifically stated that without the CAD/CAM system, EASCO's manufacturing process would cease. This comports with the language of Ark. Code Ann. § 26-53-114(c)(3)(A) (1987), which provides in part as follows:

> Machinery and equipment used in actual production include machinery and equipment that meet all other applicable requirements and which cause a recognizable and measurable mechanical, chemical, electrical, or electronic action to take place as a necessary and integral part of manufacturing, the absence of which would cause the manufacturing operation to cease. 'Directly' does not mean that the machinery and equipment must come into direct physical contact with any of the materials that become necessary and integral parts of the finished

product. . . .

EASCO relies upon our decision in *Ragland* v. *Deltic Farm & Timber Co.*, 288 Ark. 604, 708 S.W.2d 90 (1986), which upheld a use tax exemption on a crane utilized in a sawmill operation. Deltic constructed a merchandiser which was a physical plant built next to its sawmill operation and supplemented that facility. The crane served the merchandiser primarily and the sawmill secondarily. The Commissioner contended the crane was not used directly in manufacturing, but we noted the uncontradicted proof showed the sawmill department could not operate without the merchandiser department and vice versa.

The Commissioner in the case at bar says that *Deltic* is distinguishable because if the crane were absent, the manufacturing operation would cease and, in this case, EASCO's manufacturing of hand tools would continue. He contends the chancellor did not utilize the analysis set forth in *Deltic* but applied an erroneous "economically essential" test. The chancellor correctly applied Ark. Code Ann. § 26-53-114(c)(3)(A), and we find no merit to this argument.

■■ Finally, the Commissioner contends the trial court erred in determining die block material purchased by EASCO was exempt from tax. The trial court found the die block materials constituted the molds and dies which in turn determined the physical characteristics of the finished product. In its opinion, the court reasoned that "[s]imply because the material is purchased in raw form and shaped by EASCO instead of being purchased in finished form should not, alone, cause it to be taxable." The chancellor apparently determined the die block material was exempt pursuant to Ark. Code Ann. § 26-53-114(c)(3)(B)(i) (1987), which provides:

> Further, machinery and equipment 'used directly' in the manufacturing process shall include, but shall not be limited to, the following:

> Molds and dies that determine the physical characteristics of the finished product or its packaging materials;

The Commissioner argues the die block material is tangible personal property and is presumed taxable pursuant to Ark. Code Ann. § 26-53-106 (Supp. 1989). It is also argued that if the die

block material is exempt from tax pursuant to Ark. Code Ann. § 26-53-114(c)(3)(B)(i), that exemption is limited to the initial dies and molds under the authority of the Arkansas Department of Finance and Administration's regulations. The stipulated testimony of two witnesses submitted by EASCO established the die block material was utilized for the making of initial dies and molds and did not include subsequent replacement molds and dies. This testimony was unrebutted. Accordingly, we cannot say the trial court's finding that the die block material was exempt is clearly erroneous.

Affirmed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I fail to see the basis for the majority's decision. The opinion states the standard rules regarding tax exemptions which require strict construction of the exemption and proof of the exemption beyond a reasonable doubt. Yet the majority seems to entirely ignore not only those rules but also the plain language of the statute and simply finds the die manufacturing equipment to be but one step in the manufacture of the hand tools. The statute and facts here, however, clearly do not allow this conclusion.

I would first note that *Ragland v. Deltic Farm & Timber Co.*, 288 Ark. 604, 708 S.W.2d 90 (1986), which the majority appears to rely on, is easily and definitively distinguishable from the case before us. In *Deltic* we dealt with the taxation of a crane which lifted logs from logging trucks to a sawmill where certain types of logs were minimally prepared for the primary manufacturing operation which was located in a separate facility. This system was described as no more than raw wood arriving at the mill and moving through "a continuous process that produces an end result of finished timber and high-quality chips." We stated that "with regard to what is essentially an issue of fact, we cannot say that the chancellor's finding is clearly wrong," the implication being that there is a gray area at the beginning of the manufacturing process, and we could not say the trial court was clearly wrong in where it decided to draw that line.

*Deltic*, however, was dealing with the machinery involved in a step of preparing the raw material for manufacture into the

finished product-the "articles of commerce." [Ark. Code Ann. § 26-53-114(a)(1)(A) (Supp. 1989).] Our case involves machinery used to manufacture an item that is not the article of commerce this company produces at all. Rather the machinery is only used to manufacture dies for the company's own use, an operation completely aside from the manufacture of its commercial products, the hand tools. This is not analogous to the *Deltic* circumstances.

I would also note under *Deltic*, that to the extent the majority is reading the exemption statute to require a "but for" test, that holding is limited to the circumstances of that case, and the plain language of the statute, which simply makes no such allowance. Furthermore if the state were to exempt all machines, whose absence would cause operations to cease, no matter how tangential to the production, there would be almost no limit to the exempted class. Had the legislature intended such a broad exemption they have twice had the opportunity to make that point clearer in two sessions since the *Deltic* opinion. They have not moved in that direction at all, but have provided changes which if anything, have narrowed and limited the scope of the exemption. *See* Ark. Code Ann. § 26-53-114 (Supp. 1989).

As to the language of the exemption statute, it is true as the majority points out that as regards the requirement in the statute that exempted machinery be "used directly" in the manufacturing process, "molds and dies" are expressly stated as being considered as being "used directly." However, that section is referring to molds and dies used in making the finished product. Here we are not talking about the molds and dies used to make the hand tools, we are talking about the *machines* that make the molds and dies. If the company sold molds and dies, it would be another question. But they do not. They manufacture these dies for their own use and do not distribute them as articles of commerce.

Of greatest importance here, the language in the exemption does not approach the expansiveness given to it by the majority. To the contrary, the legislature had done all it could to define and limit the effect of this exemption, e.g.:

> (c)(1) It is the intent of this section to exempt only such machinery and equipment as shall be *utilized directly in*

*the actual manufacturing or processing operation at any time from the initial stage where actual manufacturing or processing begins through the completion of the finished article of commerce* and the packaging of the finished end product.

(2) The term "directly" as used in this section is to *limit the exemption to only the machinery and equipment used in actual production during processing, fabricating, or assembling raw materials or semifinished materials into the form in which such personal property is to be sold in the commercial market.*

**\*\*\*\***

(A). . .Machinery and equipment which handle raw, semifinished, or finished materials or property before the manufacturing process begins are not utilized directly in the manufacturing process. [My emphasis.]

The equipment in question here is clearly not involved in the "actual production" of the end product, as is required by the statute, but is a secondary and separate operation. The computers and terminals used to manufacture the die machines are not part of the actual production of the hand tools. They do not work with the raw or semifinished materials that become the final product.

I also find that the die block materials do not come within this exemption. It might be said that the die block material is used in both the secondary operation as well as the actual production of the hand tools. However, it is not purchased in the form of equipment, but as raw material, and as such, does not come at all within the exemption's definition of "machinery and equipment," and only machinery and equipment are exempt. *See* Ark. Code Ann. § 26-53-114(c)(3)(A) (1989) and Ark. Code Ann. § 26-53-114(a)(1)(A) (1989).