CITY OF LITTLE ROCK, Arkansas et al.
*v.* B.A. McINTOSH, Pulaski County Assessor,
and Pulaski County, Arkansas

94-158 892 S.W.2d 462

Supreme Court of Arkansas
Opinion delivered February 13, 1995

*The Rose Law Firm, A Professional Association*, by: *M. Jane Dickey* and *Amy Lee Stewart*; and *Thomas M. Carpenter*, City Attorney, by: *Melinda Raley*, Deputy City Attorney, for appellants.

*Nelwyn Davis*, Pulaski County Civil Attorney, for appellee.

ROBERT H. DUDLEY, Justice. This case involves a claim of exemption from ad valorem taxation. The City of Little Rock owns the Little Rock Municipal Airport and has delegated the operating responsibility of the airport to the Little Rock Municipal Airport Commission. The Commission leases some of the tracts of the airport property to private businesses. In July 1992, the Pulaski County Tax Assessor notified the City that ad valorem taxes were being extended to some of these tracts. The private businesses located on the tracts are four car rental companies, one aircraft modification company, two aircraft service companies, and three fixed-base operators.

The City of Little Rock and the Little Rock Municipal Airport Commission petitioned the Pulaski County Court to remove the properties from the tax rolls and claimed an exemption based on the public purposes exemption of article 16, section 5(b) of the Arkansas Constitution.

The county court held that the tracts were exempt from taxation and ordered them removed from the tax rolls. The county court found that "the activities provide services that directly support and are part of the public purpose to be accomplished." It additionally found that these uses were "necessary to adequately serve the public purposes" and that " '[p]rivate operation' does not in and of itself remove the 'public purpose' reasoning from the exemption."

The County appealed to the Pulaski County Circuit Court, which reversed, relying upon our decision in *Arkansas Conference Association of Seventh Day Adventist, Inc.* v. *Benton County Board of Equalization*, 304 Ark. 95, 800 S.W.2d 429 (1990). The circuit court ruled that although it is convenient for patrons of the airport to have these businesses located on airport property, their primary purposes are private. The circuit court also found persuasive the fact that the private businesses are competing with other taxpaying businesses in the area, and, consequently, the court found them to be nonexempt under the strict construction requirement imposed in tax exemption cases. The City appeals and contends that the properties are exempt from ad valorem taxation. We hold that the properties are not exempt from ad valorem taxation and, as a result, affirm the circuit court.

■ Article 16, section 5(b) provides: "The following property shall be exempt from taxation: public property used exclusively for public purposes. . . ." Ark. Const. art 16, § 5(b). We have stated that the test for exemption under the provision is (1) whether the property is public property *and* (2) whether it is being used exclusively for public purposes. *Phillips* v. *City of Fayetteville*, 306 Ark. 87, 811 S.W.2d 308 (1991).

■ The parties stipulated that all of the property under the direction of the Commission is public property, and they do not discuss the issue in this appeal. It is not necessary for us to explore the issue because we affirm the case on the second part of the test by holding that the property is not used exclusively for public purposes. Even so, we note that the value of lease-holds obtained from a government can be private property subject to taxation. *See Ex Parte Gaines*, 56 Ark. 227 (1892); Ark. Code Ann. §§ 26-26-905 & -1202 (1987). In addition, under the terms of most of the leases, the private businesses, not the City, own the improvements. The record in this case does not show whether the assessed valuation is made on the improvements, or on the land alone, or by adding them together.

■ We now address the second part of the test, whether the tracts are being used exclusively for public purposes. The taxpayer must establish the entitlement to an exemption from taxation "beyond a reasonable doubt." *Pledger* v. *Baldor Int'l*, 309 Ark. 30, 827 S.W.2d 646 (1992). A strong presumption operates in favor of the taxing power. *Ragland* v. *General Tire & Rubber Co.*, 297 Ark. 394, 763 S.W.2d 70 (1989). Tax exemptions are strictly construed against the exemption, and "to doubt is to deny the exemption." *Baldor*, 309 Ark. at 33, 827 S.W.2d at 648. The constitutional exemption provision is never to be used to give one business an advantage over another. *Higler* v. *Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960). On appeal, we review tax cases *de novo*, setting aside the findings of fact by the trial court only if clearly erroneous. *Pledger* v. *Easco Hand Tools, Inc.*, 304 Ark. 47, 800 S.W.2d 690 (1990).

■ The circuit court ruled that the property was not used exclusively for public purposes. The law is almost uniform that a "public purpose" contemplates that the use must be common to all and not to a particular group. *Holiday Island Suburban*

*Improvement Dist. No. 1* v. *Williams*, 295 Ark. 442, 445, 749 S.W.2d 314, 316 (1988). Further, we have recently reiterated that even when proceeds received from public property rented for private purposes are used for public purposes, the land is taxable, as the actual use must be public. *See Pulaski County* v. *Carriage Creek Property Owners Improvement Dist. No. 639*, 319 Ark. 12, 888 S.W.2d 652 (1994) (citing *School Dist. of Fort Smith* v. *Howe*, 62 Ark. 481, 37 S.W. 717 (1896)).

The City contends that it is required to furnish the services provided by the private businesses under Federal Aviation Administration regulations and under state statutes. It argues that the businesses located on the various tracts fulfill public purposes because they are an indispensable part of the airport.

The City cites a document entitled Airport Compliance Requirements, Order No. 5190.6a, which is published by the Department of Transportation under which the Federal Aviation Administration operates, for the proposition that it is required to furnish the services to the public which are provided by the private businesses located on the tracts in question. The document requires that an airport provide "activities offering flight services to the public, or support services to other flight operations, to the extent that there may be public need for such services." It encourages that "services and conveniences [be] available to attract and encourage flight activity [or] the investment may be hard to justify." However, the Order's "Scope and Authority" section states:

> The airport compliance function is a contractually-based program. It does not attempt to control and direct the operation of airports. Rather it is a program to administer valuable rights obtained for the people of the United States at a substantial cost in direct grants of funds and in donations of Federal Property.

> Such grants and donations are made in exchange for binding commitments designed to assure that the public interest would be served.

The FAA regulations neither control the public purpose of the airport for state tax purposes, nor do they preempt the imposition of ad valorem taxes upon the lands involved. While

Congress has legislated broadly and comprehensively in the area of airspace and flight control and has effectively precluded any exercise of police power in those areas, *see City of Burbank* v. *Lockheed Air Terminal, Inc.*, 411 U.S. 624 (1973), it has not prohibited ad valorem taxation of airport property. The FAA regulations do not determine whether the ground on which private businesses are located serves a public purpose for ad valorem tax purposes.

The City cites section 14-360-302 of the Arkansas Code Annotated of 1987 for the proposition that cities have the authority to own and operate airports and cites section 14-360-304 for the proposition that it "is authorized to lease airport premises to private businesses of any nature, whether or not they are essential to, connected with, or incidental to the operation of the airport." The cited statutes state that the tracts in question are public land, but they do not provide that the land is exempt from taxation. The City cites another statute, section 14-361-124(a), which provides that property acquired for public use pursuant to the Airports in Border Municipalities and Regional Airports Acts "shall be exempt from taxation to the same extent as other property used for public purposes." However, the statute, by its very wording, is of no help to the City. The City additionally cites section 14-362-121(b)(1) for the proposition that a Regional Airport Authority "shall be exempt from all local and municipal taxes." Again, the statute must be read in light of the constitution, and that means that an airport authority will be exempt from paying ad valorem taxes when the land is used solely for public purposes.

In construing the constitutional provision, we have expressly held that municipally-owned airport land that is leased to private industries is not used for public purposes and therefore is taxable. *B.D.T.* v. *Moore*, 260 Ark. 581, 543 S.W.2d 220 (1976). The constitution is clear: Exclusive public use is a necessary element for exemption from ad valorem taxes. *Phillips*, 306 Ark. at 92, 811 S.W.2d at 311.

The City contends that the leases at issue fulfill a public purpose because they provide essential services to the airport, and the airport is a public facility. The properties in question fall in three general categories: (1) car rental agencies; (2) private

aviation service companies that provide aircraft repairs, interior and exterior remodeling of aircraft, and electronic equipment repairs; and (3) fixed-base operators.

 The Commission leased four tracts to four private car rental agencies: Budget Rent-a-Car, Dollar Rent-a-Car, Hertz Rentals and Carco Rentals (one agency), and National Car Rentals. The proof showed that there is an Avis Car Rental agency directly across the street from the Budget agency. The Budget agency is located on the grounds of the airport, and the Avis agency is not. Budget and Avis are competitors in the same kind of private business, renting cars to the general public, but because Avis is not on grounds owned by the City, it pays ad valorem taxes. In *Hilger*, we stated that the exemption should never be allowed to give one business an advantage over another, and in *Brodie* v. *Fitzgerald*, 57 Ark. 441 (1893), we said exemptions must be construed to give equality to all. *Hilger*, 231 Ark. at 695, 331 S.W.2d at 856; *Brodie*, 57 Ark. at 448. All of the car rental agencies, those paying ad valorem taxes and those not paying the tax, serve the public, but that is different indeed from exclusively serving a public purpose.

 The claim of exemption for tracts on which the car rental agencies are located must fail for a more basic reason. The City leased the tracts to private car rental agencies and their purpose is private gain. When the exemption from ad valorem taxation depends upon the use of the property "then the general rule is that the exception does not apply to property rented out to others by the exempt association or to other property held or used by it merely as a source of revenue, except that a mere occasional renting out, not interfering with the primary use of the property by the lessor, does not affect the exemption." 2 Thomas M. Cooley, *The Law of Taxation* § 686 at 1435-37 (4th ed. 1924). In *City of Hope* v. *Dodson*, 166 Ark. 236, 266 S.W. 68 (1924), we wrote:

> The property in question was situated within the corporate limits, and was not used for any purpose of *private gain*. The idea of a public park in a city is that it is a place of resort of the people generally for recreation and amusement. The evidence shows that the property was used as a public park, and more particularly for track meets. It is fairly inferable, however, that it was used and kept for the recreation of the citizens. The use of it to exhibit the

resources and progress of the county was in the nature of a public use which was calculated and intended to benefit the city. Besides this, the property was used for keeping the stock of the city which were used in working the streets. *No element of private gain entered into the use of the property at all, and we are of the opinion that it was used exclusively for public purposes within the meaning of the Constitution, and therefore exempt from taxation. Of course if, at any time in the future, it should be used by the city for the purpose of private gain, it would become subject to taxation.*

*Id.* at 240, 266 S.W. at 69-70 (emphasis supplied).

In *School District of Fort Smith* v. *Rowe*, 62 Ark. 481 (1896), we wrote:

It seems clear that the intention was to exempt only that public property which in itself *directly subserved some public purpose by actual use*, as distinguished from property belonging to the public but not used by it, and from which a benefit accrues to the public, *not by the immediate use thereof by the public, but indirectly through selling or renting the same to private parties.*

*Id.* at 486 (emphasis supplied).

It has long been our law that when public land is leased or rented for private uses, ad valorem tax is imposed, even if the profits go back into the public treasury. *Id.* It would be incongruous, then, to allow exemptions for businesses for which the primary purpose is profit when the profit is *not* returned to the public. The private businesses in this case provide valuable services to the airport, just like a printing press and a laundry provided valuable services to the college in *Hilger*. However, as we said in *Hilger*, to state that the businesses are privately run for profit is "incidental" would "result in whittling away at the intent of the Constitution." *Id.* at 696, 331 S.W.2d at 857.

The City makes the same arguments for the aircraft modification center and the two aircraft service centers. Similar to each of the car rental agencies, the aircraft modification center and the aircraft service centers are private businesses located upon public property. The aircraft modification center uses its

leased premises primarily for modifying the interior and exterior of aircraft and secondarily for the sale of new and used aircraft, aircraft repair, and taxi and charter services. One of the aircraft service centers sells and services aircraft engines, engine parts, and components; while the other sells and repairs commercial and aircraft radios and provides special aircraft repair services. Just like the car rental agencies, these three private businesses serve the public in hope of making a profit, but that is different from *exclusively* serving a public purpose.

For the same reasons, the leases of public property to the three fixed-base operators can not be said to exclusively serve a public purpose. These three operators are private businesses that sell, lease, and service airplanes; sell aircraft parts and equipment; store aircraft and offer taxi and charter aircraft services; and have flight schools. As set out in *Hilger* and *Howe*, private businesses are not exempt from ad valorem taxation.

The City also argues that the circuit court misapplied the case of *Arkansas Conference Association of Seventh Day Adventist, Inc.* because the businesses are "only incidentally for private purposes;" therefore, their "predominant use" is public. A short answer to the argument is that the ruling of the trial court was not clearly erroneous because the City failed to show the source and amounts of the businesses' incomes. The city did not prove whether most of the income came from public-type services, such as servicing transient aircraft, or from more private services, such as selling airplanes. However, the more correct answer is that the "predominant and incidental use" distinction is not applicable when public property is leased to a private business. In *Hilger*, we explained this when we refused to find that the operation of a private business was only "incidental" to legitimate public purposes and stated that such a finding "could result in whittling away the intent [of the exclusive public purpose requirement for exemptions] of the constitution." *Hilger*, 231 Ark. at 696, 331 S.W.2d at 857. The "predominant and incidental" use could have been an issue if the County had alleged that the City had to pay ad valorem taxes on all of its airport property because the predominant use of all the airport property was for private business. That issue is not before us.

Affirmed.

432

GLAZE, CORBIN, and ROAF, JJ., dissent.

TOM GLAZE, Justice, dissenting. The majority opinion's removal of the Little Rock airport properties from tax exemption status is unconvincing for many reasons. First, it places heavy emphasis on the principle that for public property to be exempt under Ark. Const. art. 16, § 5(b), it must be used exclusively for public purposes. While that statement of the law is true, it omits another part of the law that applies in tax exemption cases. In this respect, the opinion ignores the well-settled rule that, where the primary and principal use to which the property is put is public, the mere fact that income is incidentally derived from its use does not affect its character as property devoted to public use. *Yves* v. *City of Ft. Smith*, 207 Ark. 694, 182 S.W.2d 683 (1944); *see also Arkansas Conf. Ass'n of Seventh Day Adventist, Inc.* v. *Benton Co. Bd. Equalization*, 304 Ark. 95, 800 S.W.2d 426 (1990); *Hilger v. Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960).

Second, the majority tends to gloss over the fact that, during the past years, the fixed-base operators (FBO), maintaining facilities for general aviation owned aircraft, had not been taxed. Bob Wofford, appraiser for the Pulaski County Tax Assessor's Office, conceded that he had no idea why these airport properties had previously enjoyed tax-exempt status. On the other hand, Wofford was equally obtuse when asked what changes had occurred to make the Pulaski County Assessor believe the FBOs' services no longer were for a public purpose, thereby making the City's airport property subject to taxation. One example of Wofford's lack of expertise and understanding of these matters can be found in his following testimony:

> In my mind, there is distinction between the common carrier aspect of the regional airport and the private carrier aspect of the properties at issue here. The common carrier aspect lends itself to the public purpose of the airport. This is a public airport, where people go to fly to places whereas the other businesses out there seem to be more engaged in the repair and refurbishing and building of aircraft or something along that line.

> In my opinion, even the charter services are not what

they are called common carrier type services. They are not scheduled. *I'm not 100% clear on this*. I don't know that there are regularly scheduled arrivals and departures on charter services, *but right or wrong, I just have a tendency to view the commercial airport as a public airport and all these other things as private.*

\* \* \*

I am not an expert in airport management. *I have never been affiliated with the Federal Aviation Administration ("FAA") in any way*. I have been affiliated with airlines. (Emphasis added.)

Third, while Mr. Wofford seemed puzzled over when airports should be considered operational for private or public purposes, the uncontested proof is that, long ago, this property had been *deeded* to Little Rock for the City to develop and maintain air service *for the general public*; it has been put to such use since World War II. Mr. Harry Denton, Assistant Manager of the Little Rock Regional Airport, testified that this airport property provides landing strips, runways, taxiways, hanger facilities and common use areas for the general public. The general public, he said, included general aviation or FBOs that, on behalf of the Airport Commission, provide services to private owners of aircraft and companies that charter aircraft. Denton underscored that these FBOs are open to the public, and the City's obligations to provide services are to the general public, including common carriers and privately owned aircraft. Denton further pointed out that the FBOs are essential to operating the airport and that these businesses are not in competition with any businesses off the airport premises.

Fourth, the exempt status given the Little Rock airport property over the past years is thoroughly consistent with Arkansas law. For example, Ark. Code Ann. § 14-361-124 (1987) specifically provides tax-exempt status for city airport property. Accordingly, in past years, that exemption has been given the Little Rock airport property. The Pulaski County Assessor has not shown that the Little Rock Airport is now being used any differently, and in fact, Appraiser Wofford admitted that all Little Rock airport properties in issue continue to be used for the same purposes for which they were used when they enjoyed tax exemp-

tion. *See Hudgins* v. *City of Hot Springs*, 168 Ark. 467, 270 S.W.2d 594 (1925).

Finally, but significantly, the proof is again uncontested that the Federal Aviation Administration (FAA) has preempted the authority of any state to regulate airports, and no state is free to ignore FAA's regulations. FAA's regulations and Order 5190.6A require Little Rock's airport to provide, as a part of the City's airport services, all the FBO services addressed in the leases of property which Pulaski County now seeks to tax. In explaining the reason for such FAA requirement, Mr. Denton quoted the following from FAA Order 5190.6A:

> The operation of a public airport involves complex relationships that are frequently misunderstood. One can safely land an aircraft at the airport, but unless there are services and conveniences available to attract and encourage flight activity, the investment may be hard to justify. In most instances, the public agency owning the airport must turn to private enterprise to provide these services which will make the use of the airport by the public attractive and convenient.

Without setting out Order 5190.6A in its entirety, that Order unquestionably provides for services necessary to insure the public interest is served, and the City has entered leases with FBOs to provide essential services needed to fulfill that public purpose and interest. The majority opinion attempts to discount the importance of FAA's authority to require FBO services by the Little Rock Airport by stating FAA regulations cannot *preempt* the *imposition* of ad valorem taxes upon airport property. That, of course, is not the issue. *No one* suggests FAA can promulgate a regulation that could preempt a state's ad valorem tax law. The point is that FAA's public interest or purpose regulations requiring FBO services on the Little Rock Airport premises in no way conflict with the mandate of Arkansas's Constitution requiring public property to be used for public purposes in order for it to be tax exempt.

In my opinion, the City of Little Rock met its burden in showing entitlement to exemption for FBO services, and the county assessor's proof was miserably short in his attempt to show Little Rock's tax exempt status should be changed. For the

above reasons, I would reverse the trial court and direct the property in issue be removed from the tax rolls.

CORBIN and ROAF, JJ., join this dissent.