The Honorable Steve Faris State Senator 29476 Highway 67 Malvern, Arkansas 72104-6833
Dear Senator Faris:
 I am writing in response to your recent request for my opinion on the following questions:
 1. Is the use of Arkansas Game and Fish Commission land for the drilling of gas wells on that land consistent with its mandate under Amendment 35 to manage, restore, conserve, and regulate the birds, fish, game, and wildlife resources of the State?
 2. Does public property retain its tax exemption under Article 16, § 5(b) of the Arkansas Constitution if the state agency or commission that owns the land uses the property for a state purpose as well as to generate a profit for itself by leasing the land to a non-public entity?
 3. Is land that is leased from a state agency to a commercial enterprise subject to property tax under Article 16, § 5(a) of the Arkansas Constitution?
 4. Is the language of A.C.A. § 26-3-301(4) that exempts all state property, whether real or personal, consistent with Article 16, § 5(b) that exempts public property only if it is used exclusively public purposes? *Page 2 
 5. While the Arkansas Game and Fish Commission holds title to various parcels of real property, do the people of the State of Arkansas retain the beneficial interest in the real property with the Arkansas Game and Fish Commission holding the property in trust for the people?
RESPONSE
It is impossible to answer your first question definitively without full development of the facts and circumstances surrounding this particular use of Arkansas Game Fish Commission ("Commission") land. One might reasonably question whether devoting land to drilling is consistent with the Commission's mandate to preserve and propagate the state's wildlife resources, but the case law indicates that a court faced with the question will only enjoin any particular use of Commission property if the action is shown to be ultra vires, arbitrary, or an abuse of discretion. I cannot undertake the necessary factual review to decide such matters. However, I have set forth below a general discussion that may help frame the issue.
In response to questions two and three, I must initially note that a definitive answer to these questions also requires factual determinations that I am not authorized to make. The authority to determine tax liability is vested in the local tax assessor whose decision may be reviewed in the manner provided by law. See A.C.A. §§ 26-27-317 and-318 (Supp. 2007). "The assessor must decide, on a case-by-case basis, whether property is `public property used exclusively for public purposes[,]' (Ark. Const. art. 16, § 5), and thus exempt from ad valorem taxation." Op. Att'y Gen. 2000-077. With that caveat, and based on the applicable law, it is my opinion that the assessor will not consider any individual parcel of land leased to a private entity to be tax exempt. The question of whether an entirelarger tract, containing some parcels which are leased and others which are devoted to public use, will lose its tax emption under Article 16 § 5(b) due to the presence of the leased parcels will depend upon the predominant or primary use of that larger tract.
In response to question four, the language of A.C.A. § 26-3-301(4) in my opinion is not entirely consistent with Article 16, Section 5(b) of the Arkansas Constitution because it appears to omit the constitutional requirement that public property be used exclusively for public purposes in order to remain tax exempt. See Op. Att'y Gen. 97-315. Article 16, § 6 states that the right of exemption must be found in *Page 3 
the constitution. For this reason, it is my opinion that a court would read A.C.A. § 26-3-301(4), in light of the constitution, as also requiring an exclusive public use. See City of Little Rock v.McIntosh, 319 Ark. 423, 892 S.W.2d 462 (1995).
With regard to question five, the court has identified the Commission as "trustee for the people. . . ." Farris v. Ark. State Game FishComm'n, 228 Ark. 776, 782, 310 S.W.2d 231 (1958). But the term "beneficial interest" would not appear to apply in the context of Amendment 35, given its ordinary usage to designate the character of an interest in an estate or a contract.
Question 1: Is the use of Arkansas Game and Fish Commission land forthe drilling of gas wells on that land consistent with its mandate underAmendment 35 to manage, restore, conserve, and regulate the birds, fish,game, and wildlife resources of the State?
The Commission's mandate is set forth under Amendment 35 as follows:
 The control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned, or used for said purposes and the acquisition and establishment of same, the administration of the laws now and/or hereafter pertaining thereto, shall be vested in a Commission to be known as the Arkansas Game and Fish Commission, to consist of eight members.
Ark. Const. amend. 35, § 1.[1]
The Arkansas Supreme Court has described Amendment 35 as having "a bilateral purpose to conserve wild life, and to place that duty with the Commission." W. R. Wrape Stave Co. v. Ark. Game Fish Comm.,215 Ark. 229, 234, 219 S.W.2d 948 (1949). The court has observed regarding the Commission that this body "is not only an administrative agency with constitutional status but the repository of certain powers of government enumerated in Amendment 35 to the *Page 4 
Arkansas Constitution by which it was created." Ark. Game Fish Comm'n v.Stanley, 260 Ark. 176, 178, 180, 538 S.W.2d 533 (1976). This has led the court to "consistently [uphold] the powers of the Commission as opposed to the powers of the Legislature in the field of conservation of the wild life resources of this state." Farris v. Ark. State Game FishComm'n, 228 Ark. 776, 781, 310 S.W.2d 231 (1958). Additionally, in light of the Commission's constitutional status and its Amendment 35 powers, the court reviews decisions of the Commission for "abuse of discretion." This standard is reflected in Farris, supra, wherein the court noted that "[the Commission's] powers are not unlimited, but until such time as it is more clearly shown that the Commission has abused its broad discretionary powers in matters of conservation, then it cannot be contended that the Commission has exceeded the limits of its powers."228 Ark. at 782; State Game Fish Comm'n v. Hornaday, 219 Ark. 184,187, 242 S.W.2d 342 (1951) ("The Commission determines what property is needed, and if its actions do not constitute an abuse of discretion courts will not interfere."). A review of other cases reveals that the court will find that the Commission exceeded its powers only if there is a showing that the Commission's action was ultra vires or arbitrary or an abuse of discretion. E.g., Stanley, supra; State v. Casey,225 Ark. 149, 279 S.W.2d 819 (1955).
The court has also stated, however, that the Commission's discretion "is not unfettered." Arkansas Game Fish Comm'n v. Murders,327 Ark. 426, 429, 938 S.W.2d 854 (1997). The Commission's rules and regulations must, in the words of the court, "tend to correct some evil, and promote some interest of the commonwealth, not violative of any direct or positive mandate of the constitution." Farris, supra, 228 Ark. at 784. These requirements or limitations respecting Commission rules and regulations also apply to other discretionary powers of the Commission.Stanley, 260 Ark. at 182 (observing that "the language of this court in treating rules and regulations adopted by the Commission are equally applicable to any other discretionary power vested in the Commission by [Amendment 35]." Consistent with these principles, the court in several instances has held that the Commission exceeded its authority. See,e.g., Murders, supra; Shellnut v. Arkansas Game Fish Commission,222 Ark. 25, 258 S.W.2d 570 (1953); Hampton v. Arkansas State Game FishCommission, 218 Ark. 757, 238 S.W.2d 950 (1951).
According to my review, no Arkansas case contains facts sufficiently similar to provide definitive guidance on the propriety of the action about which you have inquired. In that regard, it is clear from the few reported cases involving the *Page 5 
Commission's authority that questions of this nature simply cannot be resolved in the abstract, but instead require detailed consideration of all the surrounding facts and circumstances. I will say, however, it seems that a purpose or use that may appear on its face to be inconsistent with the conservation and propagation of wildlife will not necessarily decide the question of whether the Commission's actions go beyond the intentions of Amendment 35. Indeed, it is likely necessary to know how the property is primarily used and how the use in question relates to or impacts such use in order to determine whether the Commission has violated Amendment 35. See again Hampton, supra;Hornaday, supra.
I am not empowered as a factfinder in the issuance of opinions, and I cannot speculate further regarding the factors to consider when weighing the reasonableness of a Commission decision to use land for the drilling of gas wells. One might reasonably question whether devoting land to this use is consistent with the Commission's mandate to preserve and propagate the state's wildlife resources, but the case law indicates that a court faced with the question will only enjoin any particular use of Commission property if the action is shown to be ultra vires, arbitrary, or an abuse of discretion. Such an inquiry is not within the scope of an opinion from this office, which must be confined to questions of law, not of fact.
Questions 2 3: Does public property retain its tax exemption underArticle 16 § 5(b) of the Arkansas Constitution if the state agency orcommission that owns the land uses the property for a state purpose aswell as to generate a profit for itself by leasing the land to anon-public entity? Is land leased to a commercial enterprise subject toproperty tax under Article 16 § 5(a) of the Arkansas Constitution?
The Arkansas Supreme Court has consistently held that:
 [T]axation is the rule and exemption is the exception. Exemptions from taxation must always be strictly construed, regardless of merit, in favor of taxation and against exemption.
City of Fayetteville v. Phillips, 306 Ark. 87, 91-92, 811 S.W.2d 308
(1991).
For this reason, the party claiming an exemption must prove entitlement beyond a reasonable doubt. Ragland v. Dumas, 292 Ark. 715,732 S.W.2d 118 (1987). *Page 6 
Generally speaking, there are two requirements that must be met before property will be considered exempt under Ark. Const. art. 16, § 5(b): 1) the property must be owned by a public entity; and 2) the property must be used exclusively for public purposes. City of Little Rock v.McIntosh, 319 Ark. 423, 426, 892 S.W.2d 462 (1995). Because you stated in your opinion request that the land in question is owned by a state agency, I will not address the first requirement. Turning to the second requirement — exclusive public use — the Arkansas Supreme Court has held that public land leased to a private entity is not used exclusively for public purposes and, therefore, is not exempt and has stated:
 Further, we have recently reiterated that even when proceeds received from public property rented for private purposes are used for public purposes, the land is taxable, as the actual use must be public. See Pulaski County v. Carriage Creek Property Owners Improvement Dist. No. 639, 319 Ark. 12, 888 S.W.2d 652 (1994) (citing School Dist of Fort Smith v. Howe, 62 Ark. 481, 37 S.W. 717 (1896)).
McIntosh, 319 Ark. at 427, 892 S.W. 2d 462.
For these reasons, it is my opinion that the answer to your third question is "yes," land owned by a state agency and leased to a commercial enterprise is subject to property tax.[2] I do not believe that the tax assessor will consider such land to be tax exempt under Article 16, § 5(b). Therefore, the leased land should be subject to ad valorem taxes under Article 16, § 5(a).
Your second question, on the other hand, appears to address a slightly more complex situation. It is my understanding that you are inquiring whether the Article 16, § 5(b) exemption will apply to a large tract of land in its entirety if the public entity which owns the land leases some parcels within the tract to a private entity, but uses other parcels for a public purpose. Of course, as previously stated, any parcel which is leased to a private entity will not be exempt; however, whether these private leases will destroy the exemption for the entire larger tract will depend on the primary or predominant use of the larger tract. See McIntosh, *Page 7 319 Ark. at 431, 892 S.W. 2d 462.[3] "To determine if property is used "exclusively" for a particular purpose, generally it is necessary to look to the primary use to which the property is put and not to secondary use." Arkansas Conference of Seventh Day Adventist, Inc. v.Benton County Board of Equalization, 304 Ark. 95, 97, 800 S.W.2d 426
(1990).
If, however, an entire large tract of public land has been leased to a private entity, but portions of the leased tract are still suitable for and are, therefore, being used for a public purpose, it is my opinion that the predominant use test will not apply and the entire tract will be taxable. The Arkansas Supreme Court has declined to apply the "predominant and incidental use" test to find that property leased to a private entity is being used exclusively for public purposes, stating:
 The "predominant and incidental use" distinction is not applicable when public property is leased to a private business. In Hiliger, we explained this when we refused to find that the operation of a private business was only "incidental" to legitimate public purposes and stated that such a finding "could result in whittling away the intent [of the exclusive public purpose requirement for exemptions] of the constitution." Hiliger, 231 Ark. at 696, 331 S.W.2d at 857.
McIntosh, 319 Ark. at 431, 892 S.W. 2d 462 (brackets in original).
Question 4: Is the language of A.C.A. § 26-3-301(4) that exempts allstate property, whether real or personal, consistent with Article 16§ 5(b) that exempts public property only if it is used exclusively forpublic purposes?
Article 16, Section 6 of the Arkansas Constitution states:
 All laws exempting property from taxation other than as provided in this Constitution shall be void.
Based on the foregoing section, the Arkansas Supreme Court has repeatedly stated that, notwithstanding the provisions of an applicable statute, the right of *Page 8 
exemption must be found in the Constitution. E.g., Missouri PacificHospital Association v. Pulaski County, 211 Ark. 9, 199 S.W.2d. 329.
The relevant constitutional right of exemption is found at Article 16, section 5, and provides in relevant part:
 The following property shall be exempt from taxation: public property used exclusively for public purposes[.]
Ark. Const. art. 16, § 5(b) (emphasis added).
However, the statutory provision in question provides that the following property is exempt from taxation:
 All property, whether real or personal, belonging exclusively to this state, including property of state agencies, institutions, boards, or commissions, or the United States[.]
A.C.A. § 26-3-302(4) (Supp. 2007).
As you pointed out in your opinion request, A.C.A. § 26-3-301(4) does not, on its face, require public property to be used exclusively for a public purpose in order to be exempt. The legislature, however, is without the power to exempt all public property, regardless of whether there is exclusive public use. Ark. Const. art. 16, § 6. For this reason, it is my opinion that although the language of A.C.A. § 26-3-301(4) is not entirely consistent with that of Article 16, § 5, a court would read the statute in light of the constitution as requiring exclusive public use. Accord Op. Att'y Gen. 97-315.
Question 5 — While the Arkansas Game and Fish Commission holdstitle to various parcels of real property, do the people of the State ofArkansas retain the beneficial interest in the real property with theArkansas Game and Fish Commission holding the property in trust for thepeople?
The Arkansas Supreme Court has identified the Commission as "a trustee for the people of this State, charged with the duty of conserving the wild life resources." Farris, supra, 228 Ark. at 782. According to the court, "the state's ownership and title" are held "for the purposes of regulating and protecting the wild life and game for the common good all the people. . . ." Id. at 785; Wrape Stave Co., supra, *Page 9 215 Ark. at 239 ("Under Amendment 35 the Commission, acting for the State, has a paramount duty to the public.").
In the sense reflected in Farris, therefore, it may be stated that the Commission holds property in trust for the people. I am less certain, however, regarding the use of the term "beneficial interest" in this context, as my research has yielded no case referring to the people's interest in these terms. A "beneficial interest" is defined, generally, as "[p]rofit, benefit, or advantage resulting from a contract, or the ownership of an estate as distinct from the legal ownership or control."Black's Law Dictionary 142 (5th ed. 1979). To the extent this term designates the character of an interest in an estate or a contract, therefore, it would not appear to apply in the context of Amendment 35.
Deputy Attorney General Elisabeth A. Walker and Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:BW/JC/cyh
[1] See also Ark. Const. amend. 35, § 8 ("The Commission shall have the exclusive power and authority to issue licenses and permits, to regulate bag limits and the manner of taking game and fish and furbearing animals, and shall have the authority to divide the State into zones, and regulate seasons and the manner of taking game, and fish and forbearing animals therein, and fix penalties for violations.")
[2] For reasons which will be set forth below, it is my opinion this conclusion holds true even if the leased parcel in question is still usable for a public purposes as well.
[3] The McIntosh court did not consider the taxability of the entire larger tract; rather, it merely considered whether the individual privately leased parcels were tax exempt (they were not). However, the court stated that the predominant use of the property could have been an issue if the taxability of the entire larger tract were in question. *Page 1