# OFF-STREET PARKING DEVELOPMENT DISTRICT NO. 1 OF THE CITY OF FAYETTEVILLE et al *v.* CITY OF FAYETTEVILLE

84-207                                    683 S.W.2d 229

Supreme Court of Arkansas
Opinion delivered January 28, 1985

*Law Office of Walter R. Niblock,* by: *Walter R. Niblock,* for appellants.

*James W. McCord,* City Att'y, for appellee.

GEORGE ROSE SMITH, Justice. In 1977 the principal appellant, an improvement district, was organized to construct facilities for off-street parking in Fayetteville. Within the next two years the City of Fayetteville constructed near the downtown square a 40,000-square-foot building containing an auditorium, meeting rooms, and office space. In October, 1979, the City executed a 23-year lease of the building to the University of Arkansas, the building to be used as a Continuing Education Center. A month later the District, having constructed parking facilities in the area, revised its assessment of benefits to include an assessment of $122,180 in total benefits to city-owned Tract I, on which the Center had been built.

In 1982 the City brought this suit in chancery court, asking that the assessment of benefits against Tract 1 be declared void because the Center is public property being used exclusively for public purposes and is therefore exempt from any assessment of benefits by an improvement district. Alternatively the City asserted that the assessment is excessive and should be reduced. The District's answer denied that the Center is being used for an exclusively public purpose, raising the main issue in the case. The chancellor granted the City's motion for summary judgment, finding that the Center's use is exclusively public. We disagree with that view of the case and set aside the award of a summary judgment.

The facts, as far as they have been developed, are not in dispute. The City's lease to the University provides that the Center will be used for continuing education and will also be available for use by the general public when not needed for continuing education. The fees charged by the University for use of facilities at the Center are not sufficient to cover the cost of operation. The University has two categories of charges: An educational rate for educational meetings sponsored by the University and a substantially

higher rate for commercial groups. The Center is in competition with hotel-type conference facilities, such as the nearby Hilton Hotel. Within a six-month period groups using the Center included apparently private organizations: Baldwin Piano & Organ Company, Universal Life Meeting, Micro-Processor Conference, Cosmetology Institute, Century 21 Sales Rally, Daisy Manufacturing Planning Session, Pro-Life Rally, and others.

The Constitution of 1874, Article 16, § 5, provides property tax exemptions for public property used "exclusively" for public purposes and for grounds used "exclusively" for school purposes. Although the constitutional exemption is stated to be from ad valorem taxation, the same public purpose exemption extends to improvement district assessments unless a statute provides otherwise. *Waterworks Improvement Dist. No. 2* v. *Logan County,* 155 Ark. 257, 244 S.W. 4 (1922); *Board of Improvement* v. *School District,* 56 Ark. 354, 19 S.W. 969, 16 LRA 418, 35 Am. St. Re. 108 (1892). No such statute is involved here.

Many of our cases discussing "exclusive" uses for a given purpose were reviewed in *Hilger* v. *Harding College,* 231 Ark. 686, 331 S.W.2d 851 (1960). There Harding College, a non-profit educational institution, sought an exemption from taxation for its on-campus printing shop and laundry, as being grounds used exclusively for school purposes. Both the shop and the laundry provided jobs for students and services for the college. Both, however, accepted outside work in competition with local concerns, the shop's outside work being 10% of its total volume and the laundry's being 37%. Although all the revenue was used for school purposes, the court held that neither property was being used exclusively for school purposes. Excerpts from the opinion explain the court's reasons for its ruling:

> Taxation is an act of sovereignty to be performed . . . with justice and equality to all, and exemptions, no matter how meritorious, are acts of grace and must be *strictly construed.* . . . The fact that the rents and revenues of a property owned by a charitable corporation are devoted to the purpose for which the corpora-

tion was organized, will not exempt such property from taxation. It is only when the property itself is *actually* and *directly* used for charitable purposes that the law exempts it from taxation.

\* \* \* \* \*

There is a material difference between the use of property exclusively for public purposes and renting it out and then applying the proceeds arising therefrom to the public use. The property under our Constitution must be actually occupied or made use of for a public purpose and our court has recognized the difference between the *actual use* of the property and the *use of the income*. [Italics in the original.]

The chancellor addressed the argument that the facilities of the Center are being occasionally used for non-public purposes, but he reasoned that "the University's use is not the City's use." In a sense that is true, but the basic rule of our law is that tax exemptions must be construed strictly. In view of the commercial groups' use of the Center for non-public purposes, Tract 1 would not be exempt from the assessment if it were owned solely by the City or solely by the University. Strict construction does not permit the City and the University, by joining forces, to do indirectly what neither could do directly.

The District argues secondarily that we should abandon the rule allowing public property to be assessed for benefits conferred by an improvement district, but we perceive no reason for such a change.

The summary judgment is reversed and the cause remanded for further proceedings on the merits and on the City's assertion that the assessment of benefits is excessive.