Mr. Tom Dalton, Director Arkansas Department of Human Services 329 Donaghey Building, P.O. Box 1437 Little Rock, Arkansas 72203-1437
Dear Mr. Dalton:
This is in response to your request for an opinion on three questions concerning the proposed annexation of territory, which territory includes the Benton Services Center, to the City of Haskell. You indicate that a special election has been called on the matter on August 9, 1994. You also indicate that the Benton Services Center is a facility of the Department of Human Services "subject to the State Hospital Board," which has the complete authority for the management and control of the State Hospital. A separate statute gives the State Hospital Board the control of the Benton Services Center. See A.C.A. 20-46-202(b) (1987). The City of Haskell has passed an ordinance calling the special election on the question of annexation and you note that this ordinance does not "provide for or permit the State Hospital Board to exercise any of the power or duties authorized to the Arkansas Constitution, Amendment 33." You have three questions regarding these facts which are as follows:
1) Is there a procedure whereby the City of Haskell can annex lands owned by the State of Arkansas and used by an agency of the State of Arkansas in furtherance of a constitutionally or legislatively mandated public purpose or function?
2) If the City of Haskell ordinance number 3-94 satisfies those procedural requirements, who are the `qualified electors from the area to be annexed? More specifically, can the City of Haskell evade or avoid the will of the General Assembly by excluding the State Hospital Board from the decision making process and submitting the question to a limited group of private citizens? If the question does not have to be presented to the `Board," is the list of qualified electors limited to staff residing on the Benton Services Center Campus or should the individuals who are receiving services at the campus be included on the list of qualified electors?
3) If the special election is conducted and the electors adopt the annexation, what services must the City of Haskell provide to the Benton Services Center? Of particular concern is the question of costs associated with proposed services. For example, it appears that the City intends to impose an `annual fee on the Center for fire protection. Can the City levy such fees against the state, or is approval of the state necessary? If the state must approve such levy, to what authority must the question be presented?
In response to your first question, I have enclosed a copy of Op. Atty. Gen. 94-181, recently issued by this office. It was concluded therein that there is no requirement that the state consent to the incorporation of state property by a municipality. I can find no flat prohibition against such incorporation, and no requirement of state consent. The applicable statutes simply do not address or provide any special procedures for the annexation of state property. It appears that the City of Haskell is proceeding under A.C.A. 14-40-301 to -304, particularly A.C.A. 14-40-303
(Cum. Supp. 1993), which provides for the passage of an ordinance and the calling of a special election. I cannot read into this subchapter a prohibition against the incorporation of state property without the states consent, and have found no other statute requiring this result. For a discussion of authorities on this issue see Opinion 94-181. As was noted in that opinion, however, this fact does not automatically mean that the property is the proper subject of municipal annexation. The relevant subchapter requires the land proposed to be annexed to meet certain criteria, and conformity with this criteria may be challenged judicially. See A.C.A. 14-40-304 (1987). As was also noted in Opinion No.94-181, the annexation of state property does not necessarily give the annexing city any jurisdiction or authority over the state property which would conflict with the superior jurisdiction of the state. It is therefore my opinion, with these qualifications, that the answer to your question is "yes," there is currently a procedure whereby the City of Haskell can annex lands owned by the state.
Your second question inquires as to who the "qualified electors" are from the area to be annexed. The term "qualified electors" appears in the relevant annexation statute, which requires the "qualified electors" of the annexing municipality and the area to be annexed to adopt the ordinance. See A.C.A. 14-40-303(b)(1)(A). The subchapter does not define the term "qualified electors." This term is generally defined, however, by A.C.A. 7-1-101 (9) as meaning a person who holds the qualifications of an elector and who is registered pursuant to Arkansas Constitution, Amendment 51. See also Op. Atty. Gen. 92-342 (copy enclosed.) With regard to the more specific aspect of your second question, it is my opinion that the members of the State Hospital Board will not be "qualified electors" under this statute unless they reside in either the City of Haskell or the area to be annexed. The question of whether the staff and the recipients of services at the center will be "qualified electors" for purposes of the election will be a fact question in each instance which will involve whether each individual possesses the necessary residence and qualifications for voting purposes.
In response to your third question, the City of Haskell, if the annexation is adopted, must provide the Benton Services Center the services it has agreed to provide in the ordinance. These services are listed in Section 3 of the ordinance. The question of charging the state a fee for the provision of such services is not so easily resolved. The state, as a general matter, of course, is exempt from the payment of property taxes. Arkansas Constitution, art. 16, 5. It is unclear to me from the information presented whether the proposed "fee" for the provision of fire services is in the nature of a "tax" or is in the nature of a special assessment for services received. This will be a question of fact. The state is generally exempt from payment of the latter unless there is a special statute requiring the state to pay the assessment. See generally, Off-Street Parking Development District No. 1 v. City of Fayetteville, 284 Ark. 453, 683 S.W.2d 229 (1985). A conclusive response would require reference to all the facts surrounding the provision of the service and the exact nature of the fee involved.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely, WINSTON BRYANT Attorney General
WB:ECW/cyh
Enclosures