The Honorable Wayne Wagner State Representative P.O. Box 909 Manila, Arkansas 72442-0909
Dear Representative Wagner:
This is in response to your request for an opinion on eight questions concerning the implementation of A.C.A. §§ 14-92-202, 14-92-209 and14-92-239[1] (Cum. Supp. 1993), which involve the selection and recall of suburban improvement district commissioners. Specifically, you note that there appears to be some conflicting language within the Arkansas Code as a result of three 1993 acts enacted on the same subject. See
Acts 492, 524, and 782 of 1993.
Prior to setting out and answering your eight questions, it will be helpful, in my opinion, to set out the legislative history of the statutes in question and a quick summary of the substance of the three 1993 acts which amended the relevant statutes.
The relevant subchapter of the Arkansas Code is A.C.A. §§ 14-92-201
through -240 (1987) and (Cum. Supp. 1993), which was originally enacted in 1941 as Act 41 of 1941. The subchapter has been amended various times since its original adoption, most notably, for our purposes, however, in 1981 by the enactment of Act 510 of 1981. That act was entitled "AN ACT to Amend Various Sections of Act 41 of 1941, As Amended [Ark. Stat. Ann. 20-701 et seq.], to Establish New Procedures for the Creation and Dissolution of Suburban Improvement Districts, and for other Purposes." Prior to the 1981 amendments, suburban improvement districts could be created by a petition of the majority in value and area of owners in the district. See former Ark. Stat. Ann. § 20-701. Commissioners of suburban improvement districts were apparently named in the petition to create the district and appointed as commissioners by the county court. See former
Ark. Stat. Ann. § 20-701. Vacancies on the board of commissioners were filled by the remaining commissioners. See former Ark. Stat. Ann. § 20-703. There was a recall provision prior to 1981 (see former Ark. Stat. Ann. § 20-742 which authorized recall of a particular commissioner or all commissioners upon a petition signed by the owners of two thirds of assessed value in the district.) This provision was specifically repealed by Act 510 of 1981.
The 1981 amendments provided a new method of creating suburban improvement districts, requiring a petition of a majority of the number
of realty owners in the district as well as a majority of the owners of realty in area and value. See Act 510 of 1981, Section 1. The Act provided for the recall of commissioners upon a petition of twenty-five percent of the realty owners, and after a vote at a public hearing. SeeAct 510 of 1981, Section 8. The Act also provided for the filling of the vacancy created by the recall by election at a public meeting. Id. The Act also provided for the filling of all other vacancies at an election held at a public hearing. Id. The 1981 act, however, contained a provision (apparently a last minute amendment) which stated that: "[t]he provisions of this Act shall not apply to districts in existence on the effective date of this act, but such districts shall continue to be governed by the law in effect immediately prior to the effective date of this Act." See Act 510, Section 9. Thus, pre-1981 districts were still governed by pre-1981 law, as summarized in the preceding paragraph above, and the substantive amendments of the 1981 act regarding recall and filling vacancies applied only to districts created after the effective date of the 1981 act.
This is where the three 1993 acts come into play.
The first such act, Act 492 of 1993, is entitled "AN ACT to Amend Arkansas Code 14-92-209 [section 8 of Act 510 of 1981] to Provide That the Commissioners of Suburban Improvement Districts Created Before March 16, 1981, Shall Be Subject to the Same Recall Provisions As for Districts Created After That Date; and for Other Purposes." This act is very brief and merely applies, by operation of law, the recall provision of Act 510 to pre-1981 districts. It also states that any vacancy created by a recall shall be filled in accordance with the 1981 act, that is, by nomination and election at a public hearing. It states, however, that all other vacancies (vacancies not created by recall) shall continue to be filled in the same manner as provided by law prior to March 16, 1981. That is, under Act 492, in districts created prior to 1981, vacancies not occasioned by recall will continue to be filled by a vote of the remaining commissioners.
The second relevant act is Act 782 of 1993 (which will be discussed out of numerical order for purposes of relating its subject matter to Act 492 above) and is entitled in relevant part "AN ACT to Amend Arkansas Code14-92-202 to Allow Suburban Improvement Districts Without an Elected Board of Commissioners to Petition for the Right to Fill Vacancies by Election and to Allow for Recall of Any Commissioner. . . ." Emphasis added. This act amends a different statute than does Act 492 above. It also provides, as does Act 492, for pre-1981 districts to exercise the right to recall commissioners, but it does so only if thirty-five percent of the realty owners petition to adopt the recall provisions of Section 8 of Act 510 (§ 14-92-209). If there is no petition to adopt the recall provisions, then the provisions of Act 782, when viewed alone, would not allow pre-1981 districts to exercise any right to recall commissioners. This may be seen as contrary to Act 492 of 1993 above which applies the recall provisions of Act 510 to such districts by operation of law. Act 782, however, unlike Act 492, also provides a mechanism for pre-1981 districts to fill vacancies occurring for any reason on the board by election at a public hearing (rather than having them filled by the remaining commissioners) and to, by petition, increase the number of commissioners from three to five.
The third relevant 1993 act, Act 524 of 1993, adds a new section to the subchapter, and is entitled "AN ACT to Amend Arkansas Code Title 14, Chapter 92, Subchapter 2 to Allow Certain Suburban Improvement Districts to Select a New Five (5) Member Board of Commissioners; and for other purposes." This act applies only to districts which have less than six thousand lots and which currently select successor commissioners by a vote of the remaining commissioners. The act provides a mechanism for these districts to do away entirely with an existing board of commissioners and to elect a new five member board of commissioners. The act provides that any property owner in the district may request an election on the question, and file the request with the relevant quorum court member. An election on the question is then conducted by mail. Notice of the results of the election is given, and if necessary, notice of meetings to be held for the nomination and election of new commissioners is also given. Vacancies on the new board are ultimately filled by public election at an annual meeting. This particular act does not address any provisions for recall of commissioners.
I now may set out and address your eight specific questions in light of the background information provided above. Your first question is as follows:
 1) Does Act 492 make § 14-92-209 applicable to all improvement districts, including specifically those which were in existence on March 16, 1981 (pre-1981 districts?)
It is my opinion that the answer to this question is a qualified "yes." Act 492 only makes one subsection of 14-92-209 applicable to pre-1981 districts. It only makes § 14-92-209(a) regarding the recall of commissioners applicable to such districts. Act 492 does not make subsection (b) of § 14-92-209, regarding the filling of non-recall vacancies by election, applicable to pre-1981 districts. Act 492 states that in pre-1981 districts the filling of vacancies occurring other than by reason of recall is still to be by vote of the remaining commissioners.
Your second question is as follows:
 2) If so, can twenty-five percent (25%) of the `owners of realty' petition for the recall of district commissioners?
It is my opinion that the answer to this question is "yes." Twenty-five percent of the number of realty owners in the district can petition for recall of commissioners. There must be a public hearing after the petition, however, where a majority of votes cast, (if at least 25% of all votes entitled to be cast,) may operate to remove a commissioner or commissioners. The successors will be nominated and elected at the public meetings provided for in 14-92-209(a)(5), and (6).
Your third question is as follows:
 3) If one or more commissioners are removed by the process reflected in #2 above, by what process would they have to be replaced?
As stated above, under Act 492, if a commissioner is removed by recall, his or her replacement is selected by nomination at a public hearing, and by later election at a subsequent public meeting. See A.C.A. §14-92-209(a)(5) and (6). Assuming the district employs the 25% procedure of Act 492, however, commissioners who are not removed by recall, but who leave office for any other reason, are still to be selected by the remaining commissioners under prior law (assuming that the district has not invoked the provisions of Act 782 of 1993 by petition of 35% of the realty owners or invoked the provision of Act 524 and elected a new five member board). See discussion infra.
Your fourth question is as follows:
 4) Does Act 782 apply to districts in existence on March 16, 1981, and does it in any way repeal a portion of Act 492 if the provisions are inconsistent?
It is my opinion that Act 782 clearly applies to districts in existence on March 16, 1981, and that it does not in any way repeal a portion of Act 492, which in my opinion can be read consistently with Act 782. Act 782 clearly states that it applies to districts in existence on March 16, 1981. Act 782, Section 1, which amends A.C.A. § 14-92-202 by adding subsection (b), states that: "Upon the petition of thirty-five percent (35%) of the realty owners of a district in existence on March 16, 1981,
the district shall be subject to the provisions of § 14-92-209. . . .") In fact, districts in existence on March 16, 1981 are the only districts to which Act 782 applies.
In response to the second half of your fourth question, in my opinion Act 782 can be read consistently with Act 492. These acts pertain to the same general subject matter, and were passed at the same session of the legislature. A court is required to reconcile statutes of the same general subject matter, construing them together if possible, in order to implement the legislature's intent. It has been said that this rule of statutory construction is especially true where the acts were enacted during the same general session of the legislature. Sargent v. Cole,269 Ark. 121, 598 S.W.2d 749 (1980). See also Walker v. McCuen,318 Ark. 508, 886 S.W.2d 577 (1994). Thus, if at all possible, a court will read these acts harmoniously, so that one does not repeal the other. In my opinion such a construction is possible here. Act 492, as noted, provides only that realty owners in a pre-1981 district may petition (by twenty-five percent) to recall one or more commissioners. Those commissioners removed would be replaced by public election. Act 782, on the other hand, while also allowing a district to implement the recall procedure, requires an initial petition of thirty-five percent of the realty owners to adopt it, and thereafter would require the twenty-five percent petition to recall. This fact may seem to contradict Act 492, which requires no such initial petition. Act 782, however, also provides some other very important options. It authorizes a petition to provide that all vacancies occurring on the commission, whether by recall or not, will be filled by public election. Act 492 does not go this far. In addition, Act 782 authorizes the petition to include a provision for an increase in the number of commissioners from three to five. Act 492 does not go this far. It is my opinion that each of these acts is independent of the other, and it is up to the realty owners of a particular pre-1981 district to decide which act best suits their wishes for change in the district. If the realty owners simply want to recall one or more commissioners and have their replacements elected, they may choose to follow the provisions of Act 492, realizing of course, that future commissioners who leave office other than by recall will be replaced by vote of the remaining commissioners, and that the number of commissioners will remain at three. If the realty owners wish to go further, however, i.e. to provide for the recall of sitting commissioners, to elect their replacements, and to ensure that any future vacancies on the board will be filled by public election, and/or if they want to increase the number of commissioners to five, they may wish to employ the provisions of Act 782 to accomplish these goals. In sum, in my opinion, each of these acts (and Act 524, for that matter) may operate independently of each other, and it is up to the district realty owners to determine which act best suits their wishes and needs.[2]
Your fifth question is as follows:
 Under Act 782, can the property owners of a district in existence prior to March 16, 1981 vote to come under the provisions of § 14-92-209 and by petition increase their board of commissioners from three to five members?
In my opinion the answer to this question is "yes," this is exactly what Act 782 authorizes. There must be a petition, however, of thirty-five percent of the realty owners of the district filed with the circuit court where most of the district is located.
Your sixth question is as follows:
 Does § 14-92-209 apply to a pre-1981 districts only if 35% of property owners sign a petition that is filed and approved by their circuit court?
In my opinion A.C.A. § 14-92-209(b), regarding the filling of vacancies generally, only applies to such districts upon petition of thirty-five percent of the property owners and when such petition is filed with the circuit court. In my opinion, § 14-02-209(a) regarding recall, applies by operation of law (see Act 492) and may be invoked by petition of twenty-five percent of realty owners, and implemented through a public hearing and an order of the "county" court.
Your seventh question is as follows:
 Does § 14-92-239 [codified at § 14-92-240] have any effect on pre-1981 districts, or are they exempted under Act 782?
This statutory subsection was added by Act 524 of 1993. It is the 1993 act which provides for an entirely new five member board of commissioners to be elected. It does not mention recall. It merely assumes that upon the election of the new board, the service of the old commissioners expires. It is my opinion that this act does have applicability to pre-1981 districts, assuming that those districts have "less than six thousand lots." Section 1 of Act 524, wherein it adds § 14-92-240 (a) provides that "[a]ny suburban improvement district which contains less than six thousand (6,000) lots and which selects successor commissionersby a vote of the remaining commissioners may alter the number and method of the board of commissioners of the district pursuant to this section." Emphasis added. The only districts which "select successor commissioners by a vote of the remaining commissioners" are pre-1981 districts.Act 510 of 1981 required post-1981 districts to elect successor commissioners at a public meeting. It is therefore my opinion that Act 524 is applicable to those pre-1981 districts with less than six thousand lots. It is also my opinion that this act may be employed independently of Acts 492 and 782.[3]
Your eighth and final question is as follows:
 8) If the improvement district falls within the boundaries of an incorporated city, is the city considered an `owner of realty' and therefore eligible to participate with the various processes identified above?
It is my opinion, in response to this question, that the city is to be considered an "owner of realty" only to the extent of the property it owns which is not tax exempt. If all the property of the city in question is tax exempt, then it is my opinion that the property is not subject to assessment by the district, and the city is therefore not entitled to participate in the processes noted above. City property, even tax exempt property, can be subject to assessment for local improvements. The Arkansas Constitution art. 16, § 5, which exempts "public property used exclusively for public purposes" from property taxation, does not apply to assessments for local improvements. See Rainwater v. Haynes,244 Ark. 1191, 428 S.W.2d 254 (1968). The legislature may enact a statute, therefore, requiring tax-exempt city property to be subject to local assessments. The constitution does not prohibit such a statute. The rule is that: "[a]lthough the constitutional exemption is stated to be from ad valorem taxation, the same public purpose exemption extends to improvement district assessments unless a statute provides otherwise."Off-Street Parking Development District No. 1 v. City of Fayetteville,284 Ark. 453, 683 S.W.2d 229 (1985). No such statute is applicable here, however. There is no statute providing that suburban improvements districts assessments shall apply to city-owned property. Nevertheless, the court held in Off-Street Parking that property held by the city which is not tax-exempt (that is, which is not used exclusively for public purposes) is subject to such assessment even if there is no statute providing so.[4]
It is my opinion therefore, that to the extent the city owns taxable property, it will be entitled to participate in the procedures outlined above, and this property will be subject to assessment by the district.See note 3, supra, however. To the extent the city's property is tax -exempt, however, the city will not, in my opinion be included as a "realty owner" for purposes of A.C.A. §§ 14-92-201 through -240.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] Although the original Act 524 of 1993 refers to the new section added thereby as A.C.A. § 14-92-239, this provision is actually codified as A.C.A. § 14-92-240.
[2] A contrary argument would assert that these two acts are contradictory, and that, Act 782, as the Act which was signed later, would operate to repeal Act 492 and require an initial petition of thirty-five percent in each case. I cannot reach this conclusion, however, in light of the strong presumption against repeals by implication, and a court's duty to reconcile conflicting acts, when possible.
[3] You have not inquired as to whether this act could be employed in conjunction with either of the other two acts, and thus I do not address this question.
[4] Act 669 of 1995, however, purports to extinguish any claim existing on March 17, 1995 for improvement district assessments based upon the use of public property for events which are not open to the general public.