194 P.2d 435

## CITY OF GLENDALE et al. v. WHITE.
### No. 5079.

Supreme Court of Arizona.

June 1, 1948.

John W. Corbin, City Atty., of Glendale, and Kramer, Morrison, Roche & Perry, Special Counsel, of Phoenix, for appellants.

Richard S. Gilmore and C. A. McKee, both of Glendale, for appellee.

Francis J. Riley and George Read Carlock, both of Phoenix, amici curiæ.

UDALL, Justice.

On this appeal we are presented again with the problem as to whether a municipality can lawfully expend its funds for membership dues in the Arizona Municipal League.

. This action seeking declaratory and injunctive relief, was brought by Howard D. White (appellee), a citizen and taxpayer of the City of Glendale, against the city and certain of its officers (appellants) challenging the legality of contributing public funds toward the support and maintenance of the league. The trial court, doubtless deeming itself bound by the majority decision of this Court in the case of City of Phoenix v. Michael, 61 Ariz. 238, 148 P.2d 353, granted plaintiff's motion for summary judgment, declared such contributions illegal and enjoined the defendants from making further payments to the league. The facts are nowise in dispute.

The defendants make but one assignment of error which reads:

"The Superior Court erred in rendering judgment in favor of the plaintiff and against the defendants, because, under the undisputed facts and the law thereunto applicable, the City of Glendale has the right to be a member of the Arizona Municipal League, to avail itself of services rendered by the league, and to contribute proportionately to defray the necessary expenses of the League."

and submit in support thereof this single proposition of law:

"An incorporated city may lawfully expend its public funds for membership dues in a cooperative, non-profit association organized and existing for the sole purpose of furnishing municipal services to the cities and towns comprising its membership. Such disbursements are justified as expenditures for a lawful public purpose."

We are, therefore, confronted with the same questions that arose in the Michael case, supra; (1) is the purpose for which the city proposes to expend its moneys a public purpose; and (2) if this question

234

be answered in the affirmative, does the city charter or the general law authorize the city to expend its moneys for such purpose?

In the Michael case, supra, the majority of this Court, as then constituted, held that such an expenditure was illegal as not being for a *public purpose,* hence there was no occasion to entirely pass upon the second question. If we are to blindly adhere to the rule of stare decisis the judgment of the lower court in the instant case should be affirmed as the only difference in the situation now and then is that the municipality there involved was a home-rule city and the league has since amended its constitution by omitting therefrom the offending Article "C" which read:

"To secure legislation which would be beneficial to the municipalities of the state and the citizens thereof and to oppose legislation injurious thereto."

which came in for particular condemnation by this Court in the Michael case, supra.

We readily agree with the late Justice Cardozo,

" * * * adherence to precedent should be the rule and not the exception. * * * labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one's own course of bricks on the secure foundation of the courses laid by others who had gone before him * * *." The Nature of the Judicial Process, by Cardozo, p. 149.

However where, as here, no property rights have become vested in reliance upon the old rule there is much less hesitancy upon the part of an appellate court to reconsider the correctness of its former decision particularly when it was decided by a divided court.

"The rules and principles of case law have never been treated as final truths, but as working hypothesis, continually retested in those great laboratories of the law, the courts of justice. Every new case is an experiment; and if the accepted rule which seems applicable yields a result which is felt to be unjust, the rule is reconsidered." The Nature of the Judicial Process, by Cardozo, p. 23.

"The final cause of law is the welfare of society. The rule that misses its aim cannot permanently justify its existence * * *." Ibid p. 66.

" * * * The general rule is that municipal corporations possess and can exercise only such powers as are granted in express words, or those necessarily or fairly implied in or incident to the powers expressly conferred, or those essential to the accomplishment of the declared objects and purposes of the corporation * * *." 37 Am.Jur. Municipal Corporations, sec. 112, p. 722. See also Municipal Corporations, Dillon, Fifth Edition, Vol. 1, Sec. 237, p. 448 et seq.

The defendants make no claim that the payment of dues which it proposes to pay to the league is expressly authorized by either the constitution, statute, or its charter. They wholly rely upon implied authorization.

It must be conceded that the City of Glendale has the following express authority: Article 13, Section 5, of the Arizona Constitution provides that every municipal corporation shall have the right to engage in any business which might be engaged in by a person, firm or corporation by virtue of a franchise from such municipality.

Article 2, Section 34 of the Arizona Constitution provides that every municipal corporation shall have the right to engage in industrial pursuits. In addition to which towns of the class of Glendale are, under Article .2, Chapter 16, A.C.A.1939, as amended, granted numerous additional powers, in fact the officers of a municipality are required to administer affairs touching a wide range of human activity, health and sanitation, fire control, safety, and police protection, transportation, parks and playgrounds, and a score of other activities touching the daily life of every citizen. Some of these functions are purely governmental, while in others the municipality is acting strictly in a proprietary capacity.

The league is a non-profit cooperative association operated for the benefit of the thirty-five cities and towns within the state who comprise and compose its municipal membership. Within those cities and towns reside more than sixty per cent of the population of Arizona.

In connection with the discharge by the city officials of the multitudinous duties imposed upon them by law, it is well to determine what service the league offers its members. We quote from the articles of the league:

"2. The objects for which the league is organized and for which it exists and functions are the following:

"a— To promote the health, safety and general welfare of inhabitants and residents of cities and towns of Arizona by fostering the adoption by such cities and towns of sound methods of municipal government and sound methods of administration and conduct of municipal affairs.

"b— To promote improvement and efficiency in the municipal government and in the administration of municipal affairs in the cities and towns of Arizona.

"c— To promote cooperation between officials of cities and towns of Arizona and the interchange of experiences in the conduct of municipal government and municipal affairs to the end that each may profit from the experiences of the others.

"d— To promote periodical conferences or meetings of officials of cities and towns of Arizona for the discussion of municipal problems and by research and study to find solutions for the same.

"e– To render technical, informational and other services to cities and towns of Arizona in the conduct of their respective municipal governments and administration of their municipal affairs and for their general welfare.

"f– To publish, circulate and disseminate publications, articles and other information relating to conduct of municipal government and municipal affairs.

"g– To furnish the following services to its members, cities and towns:

"1. Technical services and advice for the planning and zoning governing the use of land;

"2. Uniform methods of accounting, traffic regulation, occupational licenses and operation of services rendered by member cities and towns in their proprietary capacity;

"3. Drafting of ordinances and issuing legal opinions approved by the League's City Attorneys' Committee on Law;

"4. Maintaining an information exchange for the use of such cities and towns and furnishing information to its member cities and towns which might affect their interest, rights and privileges under Federal and State government action; and

"5. The rendering of services in recodifying the statutes governing cities and towns of the State of Arizona, clarifying any conflict of laws and making their application uniform to all such cities and towns."

In grappling with our problem we realize full well that it is extremely difficult to determine in many cases what are and what are not "public purposes" for which public funds may be expended. See McQuillin, Municipal Corporations, Second Edition, Vol. 5, Sec. 2325, p. 938, for illustrations.

That the term "public purpose" is incapable of exact definition and changes to meet new developments and conditions of times was clearly stated by this Court in the case of City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 679, 46 A.L.R. 828:

"What is, and what is not, a public purpose? It is fundamental that taxes may not be levied for private purposes. * * *

" 'Public purpose' is a phrase perhaps incapable of definition, and better elucidated by examples.

\* \* \* \* \* \*

"In considering what is properly a public purpose, we should not be controlled to too great an extent by decisions of courts in climates far distant from ours. Further, we should not be to too great an extent controlled by decisions which come from a remote time, and therefore may be out of tune with modern conditions. The question of what is a public purpose is a changing question, changing to suit industrial inventions and developments and to meet new social conditions. Law is not a fixed and rigid system, but develops, a living thing, as the industrial and social elements which

form it make their impelling growth. * * * Ruling Case Law, Volume 19, at page 721, has this to say concerning what are public purposes:

· " 'Municipal corporations are not limited to provide for the material necessities of their citizens. * * * The trend of authority in more recent years has been in the direction of permitting municipalities a wider range in undertaking to promote the public welfare or enjoyment' ".

■ However, we think there is one principle of law that was not sufficiently weighed or considered when the Court in the Michael case concluded that expenditure of public funds for municipal dues was not for a public purpose and that is the principle enunciated in the California case of City of Roseville v. Tulley, 55 Cal.App. 2d 601, 131 P.2d 395, 400 (referred to in Chief Justice Stanford's dissent in the Michael's case):

"The question as to whether the performance of an act or the accomplishment of a specific purpose constitutes a 'public purpose,' and the method by which such action is to be performed or purpose accomplished, rests in the judgment of the city council, and the judicial branch will not assume to substitute its judgment for that of the governing body unless the latter's exercise of judgment or discretion 'is shown to have been unquestionably abused.' * * * "

■ No hard and fast rule can be laid down, for in determining whether a proposed expenditure of public funds is valid as devoted to a "public use or purpose" each case must be decided with reference to the object sought to be accomplished and to the degree and manner in which that object affects the public welfare. Opinion of the Justices, 320 Mass. 773, 67 N.E.2d 588, 165 A.L.R. 807. The object (according to the answer) here sought to be accomplished is to improve the administration of municipal affairs by maintaining membership in a league devoted to that purpose. We believe that the common council should have some latitude in the matter and that it would be an unwarranted interference with legislative functions of the common council for the court to determine, without any proof being adduced, that membership in the league would result in no benefit to the city. It is here that we primarily disagree with our brethren representing the majority who decided the Michael case.

■ If perchance the league should get "out of bounds" by failing to adhere to the purposes for which it purportedly exists, the taxpayers of municipalities are not without remedy, for under such circumstances the courts would grant appropriate relief since membership in the league would no longer constitute a "public purpose" for the expenditure of public funds.

The common council of the City of Glendale decided, in the exercise of its discretion, that maintenance of a membership in the league (at a cost for the year 1947 of $48.55) was for a public purpose and was essential and necessary to the City of Glendale and its citizens. Where there is no constitutional provision or law forbidding such action, we do not believe the court may substitute its judgment for that of the common council unless the latter's exercise of judgment or discretion is shown to have been unquestionably abused. See Los Angeles County v. Dodge, 51 Cal.App. 492, 197 P. 403; Lynch v. City and County of San Francisco, 3 Cal.2d 141, 43 P.2d 538.

In the brief of the attorneys appearing amicus curiae reliance is had, in part, upon the decision in the case of Sims v. Moeur, 41 Ariz. 486, 19 P.2d 679. We do not believe that it has any bearing on our present fact situation. In that case public money was admittedly spent for political purposes, i. e., to defeat a proposed amendment to the Workmen's Compensation Law which was deemed undesirable by the members of the Arizona Industrial Commission. This Court properly branded the conduct of the Commission members in this matter as "shocking" as there the court was able to say as a matter of law that the expenditures made were wholly illegal, hence the element of discretion did not arise.

Certainly we cannot assume that there is anything inherently dangerous or illegal in a municipality maintaining membership in the league or that such action on their part is an abuse of discretion per se.

Clearly the trend of modern judicial opinion relative to expenditure of public funds for payment of municipal dues is away from the rule set forth in the Michael case, supra, e. g.: the Supreme Court of Michigan in Hays v. Kalamazoo, 1947, 316 Mich. 443, 25 N.W.2d 787, 792, 169 A.L.R. 1218, confronted with a situation somewhat parallel to the case at bar has this to say:

"Applying the general principal suggested by the language of Justice Cooley, [People ex rel. Detroit & H. R. Co. v. Township Board of Salem, 20 Mich. 452, 4 Am.Rep. 400] in the light of the home rule provisions of the Constitution and the city home rule act, we think it must be said that the city of Kalamazoo had the right to join the Michigan Municipal League, to avail itself of the services rendered thereby, and to expend money out of public funds in payment therefor. The record fully justifies the conclusion that the welfare of the city was thereby served and, hence, that the purpose was a city public purpose."

See also City Affairs Committee v. Board of Commissioners, 1946, 134 N.J.L. 180, 46 A.2d 425. And the Supreme Court of Illinois in People ex rel. Schlaeger v. Bunge Bros. Coal Co., 1945, 392 Ill. 153, 64 N.E. 2d 365, 371, said:

"Appellant next argues that it was error to sustain the objection to the appropriation and levy for dues to be paid to the Illin-

ois Municipal League, $3,000; dues to be paid to the United States Conference of Mayors $3,000, and the purchase of works of art $2,000. The trial court held these appropriations were not for corporate purposes. We are of the opinion that so far as the payment of dues to the Illinois Municipal League and the United States Conference of Mayors are concerned, these represent not appropriations to private corporations, as argued, but appropriations to the city to be used for payment of dues in these organizations by reason of the benefit to be derived from the service given by such corporations. It seems clear that the discussion, by mayors and other city officials, of problems affecting the well-being of their respective cities, and the study of conditions affecting taxpayers of municipalities, are public purposes, and moderate appropriations for those purposes are justified."

The case of Frohmiller v. Board of Regents, 64 Ariz. 362, 171 P.2d 356, 357 involved the validity of claims presented by the Board of Regents for dues for membership in certain educational associations and for reimbursement for traveling expenses attending conventions of the association. While it was there pointed out that the legislature had specifically appropriated money for the purposes specified in these claims, this Court said:

"Plaintiff stated in her brief that 'Frankly, the appellant is in accord with this contention by the appellee but believes that this Court has held to the contrary in Michael v. City of Phoenix.' While it is true that in the City of Phoenix v. Michael case, supra, the City of Phoenix lacked proper authority through its charter to expend certain funds, *the reasoning in the case of People v. Bunge Bros. Coal Co., 392 Ill. 153, 64 N.E.2d 365, 371, shows the trend of courts to a broader view in allowing the use of taxpayers' money."* (Emphasis supplied.) See also Ward v. Frohmiller, 55 Ariz. 202, 100 P.2d 167.

A good analysis of the majority opinion in the Michael case, supra, which also contains an accurate forecast of the view that might be taken by this court, as now constituted, is found in the language of the editor of the annotation appearing in 169 A.L.R., p. 1233, we quote:

"Although the decision in the Michael case (Ariz.) supra, turned, at least partially, on the lack of power by the charter of the City of Phoenix to allow the expenditure of funds for membership in the Arizona Municipal League, a later opinion of the Supreme Court of Arizona (Frohmiller v. Board of Regents of University & State Colleges, 1946, 64 Ariz. 362, 171 P.2d 356), allowing claims of the state board of regents for dues for membership of state colleges in certain educational societies, associations, and organizations not alone by virtue of a statute appropriating funds for such purposes but also on the ground that they were for a 'public purpose', raises the possibility that the Arizona court might

now be inclined to a more liberal view in allowing the use of public funds to support a Municipal Leauge. This possibility is strengthened somewhat by the Arizona court's apparent approval of the decision in People ex rel. Schlaeger v. Bunge Bros. Coal Co., 1945, 392 Ill. 153, 64 N.E.2d 365, which allowed an expenditure of public funds for the payment of dues to the Illinois Municipal League."

We have reached the conclusion that the majority opinion in the Michael case forbidding municipalities in all events from availing themselves of the services of the Arizona Municipal League is wrong as it represents an ultra conservative view of the actualities confronting municipalities in these modern times. We do not believe that a municipal corporation ought to be required to exist in an intellectual vacuum bereft of the power to expend some of its funds in a reasonable effort to learn the manner in which complex municipal problems, arising from the operations involving both its governmental and proprietary capacities, are being solved in sister cities of the state, thereby improving the quality of service it renders its own taxpayers. Nor can we subscribe to the naive view, expressed in the majority opinion in the Michael case, that every public official and employee assumes his office completely equipped with adequate knowledge of the manner in which his duties may best be performed. This is an unwarranted assumption based upon a false premise and is contrary to a realistic view of public administration.

The first question having been answered in the affirmative we have no hesitancy in holding that the constitution, general law and the city charter impliedly authorize the city to expend its money for such a public purpose as is presented in this case.

While we agree with that portion of the majority decision in the Michael's case holding that the incurrence of expenditures by a city in payment of dues and assessments to a league is not prohibited by constitutional provisions (Art. 9, Sec. 7) forbidding municipalities to "give or loan its credit * * *, or make any donation * * * to any * * * association, * * *", we expressly overrule such portions of the decision as are contrary to the views herein expressed. The trial court erred in granting plaintiff's motion for summary judgment and entering judgment thereon. The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

STANFORD, C. J., and LA PRADE, J., concur.