HOLIDAY ISLAND SUBURBAN IMPROVEMENT DISTRICT #1 of Carroll County, Arkansas *v.* Carolyn WILLIAMS, Tax Assessor, Carroll County, Arkansas, et al.

88-61                                              749 S.W.2d 314

Supreme Court of Arkansas
Opinion delivered May 9, 1988

*Kenneth H. Castleberry*, for appellant.

*Terri L. Harris*, Deputy Prosecuting Att'y, for appellees.

STEELE HAYS, Justice. The issue is whether the facilities of the Holiday Island Suburban Improvement District are exempted from general property taxes under Article 16 of the Arkansas Constitution. The trial court held that while some of the facilities were exempt, some were not, and the District has appealed from the adverse ruling. There is no.cross-appeal. We affirm the decree.

The District, Holiday Island Improvement District No. 1 of Carroll County, Arkansas, was formed in 1970 pursuant to Ark. Code Ann. §§ 14-92-201 et seq. (1987) [Ark. Stat. Ann. §§ 20-701 et seq. (Supp. 1985)]. The District issued bonds to construct a water system, sewage treatment plant, roads and recreational facilities. In 1970 the developer of the project, MCO Properties, transferred to the District the ownership of golf courses, tennis

courts, and other recreational facilities, as well as buffer zones and an administration building formerly used as a sales office.

In 1985 appellee Carroll Williams, Tax Assessor of Carroll County, placed the District's real property on the tax rolls of the county. The District sued for a declaratory judgment that its property was exempt from taxation. The chancellor held the district was a government entity and that its fire stations, water system, sewage treatment plant, and administration building were exempt but its two golf courses, boat dock, maintenance shop, recreational center and camp grounds were not, because they were not used exclusively for public purposes. The District argues on appeal that the chancellor erred in ruling that the facilities were not exempt under Article 16, § 5(b) of the Arkansas Constitution. The provision reads in part:

> The following property shall be exempt from taxation: public property used exclusively for public purposes . . .

The District points out that the appellee informed the trial court she considered these facilities to be taxable because the District was not a governmental entity whereas the chancellor reached a contrary decision on that issue, but held certain of the facilities were not used exclusively for public purposes. We need not decide whether the facilities of this suburban improvement district constitute "public property" within the meaning of Article 16, because it is clear the other part of the equation— "used exclusively for public purpose"—is lacking. The chancellor so found and we agree. While that issue was mildly disputed below, in that the District attempted to prove the facilities were available to the public, there was persuasive evidence that the facilities were restricted to property owners of Holiday Island, membership being conditional on owning property in the District. We cannot say the chancellor's finding that the facilities were not used exclusively for public purposes was clearly against the preponderance of the evidence. ARCP Rule 52(a). In fact, he could hardly have held otherwise in view of the proof that signs were prominently displayed declaring "Property Owners Only" and "Members and Guests Only."

The District maintains there are 4,000 owners of lots in the improvement district residing in all fifty states and these individuals, and not just the general public, should be regarded as

"the public"; that anyone can become eligible by purchasing property in the District. We are unwilling to adopt that interpretation. The requirement that someone make a substantial investment in real property before becoming eligible to use "public" facilities, whether they be a park, a zoo, a golf course, campgrounds, or otherwise, is foreign to the generally accepted concept of "public" usage. We do not regard the price of a lot, whatever it may be, in Holiday Island subdivision as the equivalent of reasonable fees to help defray the cost of public facilities. Moreover, when the remaining lots are sold even that option will be removed and eligibility will be restricted to a fixed membership.

■ While we find authority for the view that reasonable fees may be charged for use by the public, *Yoes* v. *City of Ft. Smith*, 207 Ark. 694, 182 S.W.2d 683 (1944), and that reasonable classifications of persons can be established, *Hogue* v. *Housing Authority of North Little Rock*, 201 Ark. 263, 144 S.W.2d 49 (1940), the law almost uniformly is to the effect that a "public purpose" contemplates that the use must be common to all and not to a particular group. *See Lott* v. *City of Orlando*, 142 Fla. 338, 196 So. 313 (1940); *United Community Services* v. *Omaha National Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956); *United States* v. *120,000 Acres of Land*, 50 F. Supp. 754 (D.C. Texas 1943); *Platte Valley Public Power & Irrigation District* v. *Lincoln County*, 144 Neb. 584, 14 N.W.2d 202 (1944); *Briggs* v. *City of Raleigh*, 195 N.C. 223, 141 S.E. 597 (1928); *City of Jefferson* v. *Smith*, 348 Mo. 554, 154 S.W.2d 101 (1941). While we find no case of our own squarely on point, dictum in two opinions involving public purpose notes that the facilities in those cases were available to the general public. In *City of Hope* v. *Dodson*, 166 Ark. 236, 266 S.W.2d 68 (1924), we reversed a lower court ruling that a fairground on land belonging to the City of Hope was not exempt under Article 16 § 5, noting the park was available to the general public. Similarly, in *Yoes* v. *City of Ft. Smith, supra*, we rejected a challenge to the public purpose of recreational facilities belonging to Ft. Smith, observing that the facilities were "open to the public at large."

The District has provided us with no authority, and our own research has uncovered none, holding that the use of property may be restricted to certain members of the public and still retain

a "public purpose" exemption from taxation. Public housing may be an exception, in that usage is generally restricted to individuals earning below a certain median income (*See Hogue* v. *Housing Authority of North Little Rock, supra*), but that situation is readily distinguishable for reasons that are self-evident.

█ The District contends there is a distinction between a public use and a public purpose, proposing that the Article 16 exemption rests not upon *usage* by the public but upon a public purpose as that term is used in connection with tax exempt revenue bonds. The District submits that "retirement" is an industry and Holiday Island promotes employment and other economic benefits to northern Arkansas. No doubt that is true, and if the issue here were tax exemption for the income from improvement district bonds, the public purpose requirement might be satisfied. But that is not the issue and it is clear the phrase "public purpose" is not an exact term, susceptible of a static definition [*City of Glendale* v. *White*, 67 Ariz. 231, 194 P.2d 435 (1948)], but has various shades depending on whether the context is eminent domain, revenue bonds, lending the credit of a political subdivision, or tax exemption under § 5(b) of Article 16. Thus, our decision here deals only with a public purpose within the context of Article 16 § 5(b).

█ Just as it is clear that ad valorem taxes could not be lawfully imposed upon the general public to maintain the cost of construction or maintenance of facilities used for private purposes, we can conceive of no valid reason why facilities restricted to private use should be exempted from the payment of taxes assessed against other properties of a similar character.

AFFIRMED.