The CITY OF FAYETTEVILLE, Arkansas and the Board of
Trustees of the University of Arkansas
*v.* Sue PHILLIPS, Washington County Tax Assessor

94-786                                         899 S.W.2d 57

Supreme Court of Arkansas
Opinion delivered May 22, 1995

*Ginger P. Crisp*, Assoc. Gen. Counsel for the University of Arkansas, for appellant.

*Jerry E. Rose*, Fayetteville City Attorney, for appellant.

*Winston Bryant*, Att'y Gen., by: *Ann C. Purvis*, Asst. Att'y Gen., for appellant.

*Fred H. Harrison*, Gen. Counsel for the University of Arkansas, for appellant.

*George E. Butler*, for appellee.

ROBERT H. DUDLEY, Justice. The Walton Arts Center is jointly owned by the City of Fayetteville and the Board of Trustees of the University of Arkansas. The issue on appeal is whether the Center is exempt from ad valorem taxation as "public property used exclusively for public purposes." Ark. Const. art. 16, § 5(b). It is undisputed that the Center is public property: The question is whether it is used *exclusively* for public purposes.

In 1988, during construction of the Center, appellants applied to Washington County for an exemption from ad valorem taxation. The exemption was denied, and the issue ultimately reached this court. In 1991, we affirmed the denial of the exemption for the tax year 1988. *City of Fayetteville* v. *Phillips*, 306 Ark. 87,

811 S.W.2d·308 (1991). Appellants subsequently applied for an exemption for the tax year beginning January 1, 1992. The County Equalization Board denied the exemption. Appellants appealed to the county court, and that court reversed the Board's ruling. The Tax Assessor appealed to circuit court, and the circuit court ruled that the property was not used exclusively for public purposes. Appellants appeal to this court. We affirm the ruling of the circuit court because the Center is not used exclusively for public purposes.

It is settled that a taxpayer must establish an entitlement to an exemption beyond a reasonable doubt. *City of Little Rock* v. *McIntosh*, 319 Ark. 423, 426, 892 S.W.2d 462 (1995). A strong· presumption operates in favor of the taxing power. *Id.* Tax exemptions must always be strictly construed against the exemption. *City of Fayetteville* v. *Phillips*, 306 Ark. 87, 91, 811 S.W.2d 308, 311 (1991). In *Hilger* v. *Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960), we wrote:

> Taxation is an act of sovereignty to be performed, so far as conveniently can be, with justice and equality to all, and exemptions, no matter how meritorious, are acts of grace, and must be strictly construed, and every reasonable intendment must be made that it was not the design to surrender the power of taxation or to exempt any property from its due proportion of the burden of taxation.

*Id.* at 693, 331 S.W.2d at 855 (quoting *Brodie* v. *Fitzgerald*, 57 Ark. 445, 22 S.W. 29 (1893)).

Appellants first assignment of error is that the trial court erred in ruling that because the Center rents space to individuals and private entities for private events it is not being used exclusively for public purposes. In this argument, appellants urge this court to interpret the term "public purpose" to include the concept of private use when any member of the general public can rent space for private use. We have previously rejected the argument.

The facts in the first appeal involving the Center, *Phillips*, 306 Ark. 87, 811 S.W.2d 308, showed that the facility, when completed, might be rented by private individuals and that, in some instances, events at the Center might be closed to the pub-

lic-at-large. As a result, we wrote: "The stipulated facts indicate the Center may be used for non-public purposes. Such anticipated private use, regardless of any fee arrangements, could prevent property from being used exclusively for public purposes, which is the constitutional standard." *Id.* at 94, 811 S.W.2d at 312. As authority for this statement, the opinion appropriately cites *Holiday Island Suburban Improvement District No. 1* v. *Williams*, 295 Ark. 442, 749 S.W.2d 314 (1988).

*Holiday Island* involved recreational facilities that were open only to members of an improvement district. The district argued that the facilities were for a public use because any member of the public could use the facilities by purchasing property in the district. In rejecting the argument, we wrote:

> While we find authority for the view that reasonable fees may be charged for use by the public, and that reasonable classifications of persons can be established, the law almost uniformly is to the effect that a "public purpose" contemplates that the use must be common to all and not to a particular group.

*Id.* at 445, 749 S.W.2d at 316 (citations omitted).

Similarly, in *Off-Street Parking Development District No. 1* v. *City of Fayetteville*, 284 Ark. 453, 683 S.W.2d 229 (1985), we wrote:

> There is a material difference between the use of property exclusively for public purposes and renting it out an then applying the proceeds arising therefrom to the public use. The property under our Constitution must be actually occupied or made use of for a public purpose and our court has recognized the difference between the *actual use* of the property and the *use of the income.*

*Id.* at 456, 683 S.W.2d at 231 (quoting *Hilger* v. *Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960) (emphasis in the original)).

Appellants ask us to follow the case of *City of Cleveland* v. *Carney*, 174 N.E.2d 254 (Ohio 1961). That case is contrary to our precedent, and, in addition, involves a statute with language that is different from our constitutional provision. We

choose to follow our cases, and, under those cases, which represent a strict construction of the public purpose exemption, the use of space by private entities for private events is not a use for a public purpose.

Appellants next contend that the trial court erred because the private use of the facility was only incidental to the public use, and, consequently, the private use should not deny the Center a tax-exempt status. We most recently discussed the incidental use exception in *City of Little Rock* v. *McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995), a case involving private businesses located on real estate owned by a municipal airport. We stated:

> When the exemption from ad valorem taxation depends upon the use of the property "then the general rule is that the exception does not apply to property rented out to others by the exempt association or to other property held or used by it merely as a source of revenue, except that a mere occasional renting out, not interfering the primary use of the property by the lessor, does not affect the exemption."

*Id.* at 429, 892 S.W.2d at 466 (quoting 2 Thomas M. Cooley, *The Law of Taxation* § 686, at 1435-37 (4th ed. 1924)).

In *Hilger*, the issue involved the tax-exempt status of a print shop owned by a college. In discussing incidental use, we wrote:

> We recognize that a casual or incidental outside usage might not always be inconsistent with the constitutional requirement of exclusiveness but we are unwilling to say that the outside work in this instance was casual or incidental. If we arbitrarily hold that 10% is incidental and inconsequential and that it does not violate the constitutional injunction of exclusiveness, then we would open a Pandora['s] box of borderline questions to plague the courts in the future. We are not inclined to endorse a procedure that could result in whittling away at the intent of the Constitution.

231 Ark. at 696, 331 S.W.2d at 857.

In the case at bar, appellants argue that the private use is

incidental because only 26 of 300, or only 9%, of the performances and activities at the Center were closed to the general public in 1992; that only 4% of the rental income came from private rentals; and that only .4% of the total income came from private rentals. While those limited facts are not in dispute, they do not provide an accurate measure of incidental use and do not establish entitlement to an exemption beyond a reasonable doubt.

The statistic that only 9% of the activities were closed to the general public is somewhat deluding because it does not take into account the fact that the Center sells memberships based upon contributions, which begin at $50, and continue in increments to $100, $250, $500, and $5,000, and that those who contribute $250 or more are entitled to purchase tickets in advance of the general public. The result of this "priority seating" is that the general public is excluded to an unknown extent from events. An illustration occurred when the touring production of the Broadway show "Cats" visited the Center, and only 32% of the seats were made available to the general public. The rest of the tickets had already been purchased by contributors who held priority seating. Yet, this event is included in the statistic as one being open to the general public.

Likewise, appellants proved that the total revenue of the Center in 1992 was $1,070,900, and, of that amount, rental fees amounted to only 10.4%, with private rentals constituting .4%. Again, these statistics do not present an accurate measure of the incidental use of the facilities. A significant amount of the gross income comes from corporate and individual gifts and from the earnings from a $4,500,000 endowment contributed by the Sam Walton family.

Further, even if 9% were an accurate representation of the rentals made to private persons or entities, it would not necessarily be determinative of incidental use. In *Hilger*, we explained that we would not set some arbitrary percentage of use, such as 10%, that would qualify as incidental use because to do so would violate the constitutional mandate of exclusiveness, and we would be opening borderline questions that would plague courts in the future. *Hilger*, 231 Ark. at 696, 331 S.W.2d at 857.

Another reason for denying the exemption is the fact that the facility is in competition with other tax-paying facilities

located in the area such as the Arts Center of the Ozarks located in Springdale. *See McIntosh*, 319 Ark. at 429, 892 S.W.2d at 466. We have stated the exemption should not be construed to give one business an advantage over another. *Id.*

■　Appellants' last argument is that the ticket policy utilized by the Center does not limit public access to the facility. We summarily dispense with the argument. It is manifest that the ticket priority policy substantially curtails the general public's access to some of the events.

In summary, we hold that the trial court correctly ruled that there is substantial doubt that the Center is being used exclusively for public purposes.

HOLT, C.J., and NEWBERN and BROWN, JJ., not participating.

Special Chief Justice TOM D. WOMACK, Special Justice JANET PULLIAM, and Special Justice DAVID G. HENRY, join in this opinion.