CRITTENDEN HOSPITAL ASSOCIATION *v.* The BOARD OF EQUALIZATION of Crittenden County

97-43                                                    958 S.W.2d 512

Supreme Court of Arkansas
Opinion delivered December 18, 1997

*Hanover, Walsh, Jalenak & Blair*, by: *James A. Johnson*, for appellant.

*Hale, Fogleman & Rogers*, by: *Joe M. Rogers*, for appellees.

W.H. "Dub" Arnold, Chief Justice. The property that is the subject of this appeal is a physicians' office building and parking lot located adjacent to the Crittenden Memorial Hospital and leased from the county by appellant Crittenden Hospital Association. The primary issue presented is whether this property is exempt from ad valorem taxation as public property used exclusively for public purposes. Ark. Const. article. 16, § 5(b). The Association was assessed taxes for this property for the tax year 1993 and applied for an exemption. The County Equalization Board denied the exemption. The Association appealed to the

county court, which reversed the board's ruling and ordered the property to be removed from the tax rolls. The tax assessor appealed to the circuit court, which ruled that the Association had not met its burden of proving that the property was used exclusively for public purposes. The Association appeals, raising several arguments for our review. We have permitted the Arkansas Hospital Association to file a brief as amicus curiae in support of the Association's position. Finding no merit to the Association's claims, we affirm the circuit court's judgment.

## I. Burden of proof

We examine first the Association's argument that the circuit court erred in requiring it to establish an entitlement to the tax exemption beyond a reasonable doubt. In making its argument, the Association asks us to reconsider our well-established case law on ad valorem tax exemptions:

> It is settled that a taxpayer must establish an entitlement to an exemption beyond a reasonable doubt. *City of Little Rock v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995). A strong presumption operates in favor of the taxing power. *Id.* Tax exemptions must always be strictly construed against the exemption. *City of Fayetteville v. Phillips*, 306 Ark. 87, 811 S.W.2d 308 (1991). In *Hilger v. Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960), we wrote:
>
>> Taxation is an act of sovereignty to be performed, so far as conveniently can be, with justice and equality to all, and exemptions, no matter how meritorious, are acts of grace, and must be strictly construed, and every reasonable intendment must be made that it was not the design to surrender the power of taxation or to exempt any property from its due proportion of the burden of taxation.
>
> *Id.* at 693, 331 S.W.2d at 855 (*quoting Brodie v. Fitzgerald*, 57 Ark. 445, 22 S.W. 29 (1893)).

*City of Fayetteville v. Phillips*, 320 Ark. 540, 899 S.W.2d 57 (1995). We have plainly stated that "[w]e cannot accept any lesser standard for a tax exemption case arising under the Constitution." *City of Fayetteville v. Phillips*, 306 Ark. 87, 811 S.W.2d 308 (1991).

We decline to depart from our long line of cases embracing this standard of proof.

## II. Exclusivity requirement

Article 16, section 5(b), of the Arkansas Constitution provides that:

> The following property shall be exempt from taxation: public property used exclusively for public purposes, . . . and buildings and grounds and materials used exclusively for public charity.

It is undisputed that the building and parking lot are public property; thus, the question is whether the property is used exclusively for public purposes. The circuit court concluded that the Association failed to prove beyond a reasonable doubt that the building and lot are used exclusively for public purposes. The Association challenges this conclusion, claiming that the facts presented to the circuit court demonstrated that the properties indeed serve a public and charitable purpose.

The Association initially points to the fact that the properties were constructed for a public purpose. In 1976, Crittenden County issued bonds for the purpose of financing extensions and improvements to its hospital. The following year, the bonds were refunded to finance the costs of these improvements, which included the construction of the physicians' office building and parking lot in question. The 1977 bonds were issued under the authority of Act 175 of 1961, codified at Ark. Code Ann. § § 14-265-101 *et seq.* (1987). In the county's official statement required to issue the bonds, it concluded that the improvements to the hospital and surrounding facilities were necessary in order to recruit new physicians to the area and thus to provide medical care to the public. The county entered into a long-term lease agreement whereby it leased the hospital and surrounding facilities to the Association, a not-for-profit corporation. The Association leases office space in the physicians' office building to doctors engaged in private practice who also staff the hospital. It receives rental income from this property and uses it to fund the operation of the

hospital. According to the Association, it has not raised the rental price since the building was erected.

■ The Association contends that, since the purpose of constructing the building and parking lot was to attract physicians to the county and thus provide better medical care to its citizens, this public purpose justified the issuance of a tax exemption. According to the Association, the legislature, in passing Act 175, pronounced the public policy to assist hospitals and related facilities with financing. However, the issue here turns not on the purpose behind the issuance of the bonds under Act 175 to construct these properties, but on whether the building and lot are exclusively used for public purposes and are thus entitled to a tax exemption under Article 16, § 5(b). We illustrated this point in *Holiday Island Suburban Improvement District No. 1 v. Williams*, 295 Ark. 442, 446, 749 S.W.2d 314 (1988), a case involving recreational facilities that were open only to members of an improvement district:

> The District contends there is a distinction between a public use and a public purpose, proposing that the Article 16 exemption rests not upon *usage* by the public but upon a public purpose as that term is used in connection with tax exempt revenue bonds. The District submits that "retirement" is an industry and Holiday Island promotes employment and other economic benefits to northern Arkansas. No doubt that is true, and if the issue here were tax exemption for the income from improvement district bonds, the public purpose might well be satisfied. But this is not the issue and it is clear the phrase "public purpose" is not an exact term, susceptible of a static definition [*City of Glendale v. White*, 194 P.2d 435 (Ariz. 1948)], but has various shades depending on whether the context is eminent domain, revenue bonds, lending the credit of a political subdivision, or tax exemption under § 5(b) of Article 16. Thus, our decision here deals only with a public purpose within the context of Article 16 § 5(b).

The Association further contends that the building should be considered as part of the hospital because one could not function without the other. The collection of rent, the Association asserts, is merely incidental to the charitable purpose of the hospital. In support of its argument that its purpose is not to make a profit, the

Association alludes to the fact that it has not raised the rental fees for the building. However, the applicable test for Article 16, § 5(b), purposes is not whether the rents collected from the building are used for a public purpose, but whether the building is used exclusively for a public purpose:

> There is a material difference between the use of property exclusively for public purposes and renting it out and applying the proceeds arising therefrom to the public use. The property under our Constitution must be actually occupied or made use of for a public purpose and our court has recognized the difference between the *actual use* of the property and the *use of the income*.

*Hilger v. Harding College,* 231 Ark. 686, 694, 331 S.W.2d 851 (1960) (emphasis in the original); *see also City of Fayetteville v. Phillips,* 320 Ark. 540, 899 S.W.2d 57 (1995); *Off-Street Parking Development District No. 1 v. City of Fayetteville,* 284 Ark. 453, 683 S.W.2d 229 (1985).

The Association asks that we apply the rationale of our decision in *Burgess v. Four States Memorial Hospital,* 250 Ark. 485, 491, 465 S.W.2d 693 (1971), where we recognized that a benevolent and charitable organization's property used as a hospital may be constitutionally exempt from taxation if it is open to the general public, if its services are not refused for inability to pay, and if all profits go toward maintaining the hospital and extending and enlarging its charitable purposes. However, in that case, we held that the chancellor did not err in finding that a portion of hospital property for which rents were collected was not being used directly and exclusively for a charitable purpose and thus was subject to taxation. *Id.* at 493. The tax exemption of the hospital, we said, was not affected by the revenue-generating hospital building, just as the building was not made exempt by the tax-exempt hospital. *Id.* In so holding, we emphasized that the determining factor for tax-exemption purposes is the actual use to which the property is put. *Id.*

In the present case, the circuit court considered evidence that the Association rents the building exclusively to for-profit private health-care providers. While the Association presented testimony that the parking lot is used by hospital physicians, patients, staff,

and visitors, there was also evidence that it is used by the physicians who rented the building and their patients. The circuit court obviously considered this evidence in reaching its conclusion that the Association failed to meet its burden of proving that the building and lot are used exclusively for public purposes, as "[t]o doubt is to deny the exemption." *City of Little Rock v. McIntosh*, 319 Ark. 423, 426, 892 S.W.2d 462 (1995); *quoting Pledger v. Baldor Int'l*, 309 Ark. 30, 33, 827 S.W.2d 646, 648 (1992). Moreover, an additional reason for the trial court's decision to deny the exemption is the fact that the building is in competition with other tax-paying medical facilities in the county. *See City of Little Rock v. McIntosh, supra* (city and its airport commission not entitled to ad valorem exemption where city leased airport property in question to private car rental agencies who were in competition with other tax-paying car rental companies); *City of Fayetteville v. Phillips, supra* (art center not entitled to ad valorem exemption where facility offered priority seating whereby the general public was excluded to an unknown extent from events and the center was in competition with similar tax-paying art facilities).

The Association further contends that the building is being used exclusively for the public purpose of insuring that the hospital will continue to survive. Requiring the payment of taxes on the building, the Association suggests, would threaten the existence of the hospital. After reviewing the record, we cannot say that the Association proved beyond a reasonable doubt that the hospital would not survive without a tax-free physicians' office building.

■ ■ We will set aside the circuit court's findings of fact only if they are clearly erroneous. *City of Little Rock v. McIntosh, supra.* When reviewing all the facts in this case, we cannot say the circuit court's finding that the Association failed to prove beyond a reasonable doubt that the building and lot are used exclusively for public purposes was clearly erroneous.

### III. Estoppel

The Association further contends that the tax assessor should be estopped from assessing ad valorem taxes against the Associa-

tion. In making its argument, the Association refers us to the lease agreement between it and the county that provides that the county will take no action to assess the leased premises. According to the Association, the assessor, whom it claims is a county official, should not be permitted to break this covenant.

■ The assessor is charged with the duties of making the county tax books and preparing and submitting a final abstract of those books to the State Equalization Board. *See* Ark. Code Ann. § 28-28-303 (Supp. 1995). The lease agreement referenced by the Association was not signed by the assessor, but the county judge. Thus, the assessor is not bound by the contents of the lease agreement. However, even if we were to agree with the Association that the assessor was bound by the agreement's terms, the parties to this agreement are "conclusively presumed" to have contracted with reference to the existing law, which, in this case, is our Constitution, article 16, § 5(b). *See Ellison v. Tubb*, 295 Ark. 312, 749 S.W.2d 650 (1988); *quoting Robards v. Brown*, 40 Ark. 423 (1883).

For the foregoing reasons, we affirm the decision of the circuit court.

GLAZE and IMBER, JJ., concur.

CORBIN and THORNTON, JJ., dissent.

TOM GLAZE, Justice, concurring. Although Crittenden Hospital Association contends that estoppel applies in this case, I thoroughly disagree. The Association's argument is based upon the county having leased the hospital office building to the Association and thereby agreeing "no part of the leased premises would be subject to ad valorem taxation." The tax assessor was not a party to the lease.

This court has held that a government entity can be estopped to deny the *authorized* acts of its officers, but it cannot be estopped by the *unauthorized* acts of its officers. *See Miller v. City of Lake City*, 302 Ark. 267, 789 S.W.2d 440 (1990); *Klinger v. City of Fayetteville*, 297 Ark. 385, 762 S.W.2d 338 (1988); *Greene County v. Paragould*, 166 Ark. 192, 265 S.W.2d 839 (1924).

Here, the county court and the county judge leased the premises to the Association without the tax assessor joining in the agreement. Nevertheless, the assessor is the county officer who is mandated by law to assess and place a value on all real properties. *See* Ark. Code Ann. §§ 26-26-301 -1306 (Repl. 1992) and (Supp. 1995). Simply put, neither the county court nor the county judge was authorized to agree to dispense with the imposition of an ad valorem tax on the leased premises. Consequently, under a long line of Arkansas case law, estoppel is not applicable to the circumstances described in this case. I join in the majority opinion on the other points with these added thoughts regarding estoppel.

IMBER, J., joins this concurrence.

DONALD L. CORBIN, Justice, dissenting. I dissent. The majority's decision is based on a long-standing precedent that entitlement to a tax exemption has to be proven beyond a reasonable doubt. It gives no consideration to the legislative intent declared by the Hospital Revenue Bond Act, Ark. Code Ann. § 14-265-102, the enabling act in this case. The burden here is too onerous. Proof beyond a reasonable doubt is a criminal standard and should not be applicable in a civil proceeding because it violates due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2 of our Arkansas Constitution.

It is no small wonder that there have been several efforts to seek a new constitution over the past twenty or so years. I suspect that it is the very strictness and narrow-mindedness of this court's interpretations of our 1874 Constitution that has led to the dissatisfaction with that Constitution. I am forced to the inescapable conclusion that, historically, it is rare to find a tax that this court does not like.

The record in this case outlines the critical atmosphere of modern rural Arkansas as it relates to the delivery of health care to our rural citizens. Hospitals have closed their doors throughout rural Arkansas. Crittenden County recognized the critical shortage of doctors in rural Arkansas and made a noble effort to protect the health and welfare of its citizens by establishing a plan to attract physicians to its rural location. Today we condemn these

efforts, placing the future health and welfare of Crittenden County residents at risk.

THORNTON, J., joins in this dissent.

RAY THORNTON, Justice, dissenting. In return for providing charitable care to the public, nonprofit hospitals historically have been afforded tax exemptions on their buildings and lands. Crittenden Hospital is no exception, having provided millions of dollars of charity care over the years to Crittenden County residents. It is not only the physical plant and the lands that allow the Hospital to provide charity care, but also it is the physicians who examine and treat those citizens in the hospital, and who provide after care to those same citizens in their office building following discharge from the Hospital. Without physician staff at the Hospital, the Hospital could not provide charity care. Without physician aftercare, medical services to the poor would be poor indeed. It is for this reason, and the reasons set forth below, that I respectfully dissent from the decision by the majority.

In affirming the trial court's ruling, the majority relies on the extraordinary standard of proof required to sustain a tax exemption. The majority then exercises its review of the trial court's decision and determines that the trial court's finding that the Association failed to prove beyond a reasonable doubt that the building and parking lot were used exclusively for public purposes was not clearly erroneous. While I agree that the decision of the trial court should be accorded deference, this case presents an issue involving the interpretation of our constitution, and it is our responsibility to decide the legal issues and to develop a coherent principle of law for application in future cases.

Under Article 16, section 5, of the Arkansas Constitution, all real and tangible personal property are taxable, except those enumerated in subsection (b), which excludes from taxation "public property used exclusively for public purposes; . . . and buildings and grounds . . . used exclusively for public charity." The statutes add that all buildings, and lands on which these buildings sit, are exempt from taxation so long as they are "not leased or otherwise used with a view to profit." Ark. Code Ann. § 26-3-301(7) (Supp. 1995).

The constitution does not define every instance of "exclusive public use and purpose." In light of that, we have adhered to the notion that "public policy is declared by the General Assembly; not by courts," when considering issues of tax exemption. *Kerr v. East Cent. Arkansas Regional Hous. Auth.*, 208 Ark. 625, 630, 187 S.W.2d 189, 192 (1945).

In this case, the improvements to the hospital complex were financed pursuant to Act 175 of 1961, which authorizes counties to build health-care facilities for the public benefit and provides the procedure for issuance of bonds to accomplish that public purpose. In Act 175, the legislature spoke: improvement of health care is of vital importance to the public; and as such, the construction of needed health-care facilities is a necessary and essential public purpose and function of county governments. *See* preamble to Health Care Facilities Act, codified at §§ 14-265-101 to -112.

Our decisions over many years have construed "exclusive public use and purpose" in the terms of "necessary and essential public purpose and function." When reading these cases together, a coherent principle of law emerges: A facility of a tax-exempt organization does not lose its exclusive public purpose when a private person exacts a benefit as long as the facility remains essential and necessary to the organization's primary public or charitable purpose.

In one of the earliest cases, we determined that school property held for investment was not exempt from taxation, and said: "It is necessary that a school district shall have a school building and grounds . . . . But it is not essential that a school district should hold land for the purpose of sale or rent, and as an investment for profit." *School Dist. of Fort Smith v. Howe*, 62 Ark. 481, 487, 37 S.W. 717, 718 (1896). We expanded on this analysis in *Hilger v. Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960). In that case, we determined that the operation of a printing plant, a laundry, and a dairy, at least partially for profit, caused the college to lose its tax-exempt status for those operations because they were not necessary to the educational purposes of the institution. We noted, however, that a different result might be reached if the

college offered courses of instruction requiring those operations. We said: "If and when [animal husbandry and dairying courses are offered,] a different situation will be presented relative to the exemption from taxation of such equipment and lands as are necessary to implement such course or courses . . . ." *Hilger*, 231 Ark. at 695, 331 S.W.2d at 856.

While we have recently held that the operations by private businesses of aircraft modification and service shops, car rental agencies, and other for-profit enterprises justified the removal of tax-exempt status, the thoughtful dissent by Justice Glaze joined in by two other justices reminds us of the well-established principles that clearly apply to the facts before us. *City of Little Rock v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995). The dissent pointed out that the majority opinion "ignores the well-settled rule that, where the primary and principal use to which the property is put is public, the mere fact that income is incidentally derived from its use does not affect its character as property devoted to public use." *Id.* at 432, 892 S.W.2d at 468. Equally important, the dissent recognized the "essential" character of the aircraft modification and service shops to the operation of the airports. *Id.* at 433, 892 S.W.2d at 468.

In the case before us, the primary purpose of the improvements was, and is, to attract new physicians to the area to deliver needed medical care to the County's citizens. Without physicians, the hospital cannot provide that charity care. These physicians need office space, and they need a place to park their cars. Here, the Hospital's office building and parking lot remain essential and necessary to the Hospital's primary public and charitable purpose because they afford space for an important Hospital resource, the physician staff, to practice its trade.

Further, it should not matter that these physicians also treat patients who are able to pay their bills, just as it does not matter that tax-exempt hospitals may treat patients who pay their bills. *See Burgess v. Four States Memorial Hosp.*, 250 Ark. 485, 465 S.W.2d 693 (1971). Like the charity hospital, a physician who provides charity care must also treat non-charity patients to survive. Moreover, it would defy logic to preserve a tax exemption

when physicians deliver this medical care from office space located in the Hospital, but to deny this exemption when these physicians provide this care in an adjacent building, connected by a walkway.

The majority points out that the trial court based its decision, in part, on the fact that the office building is in competition with other tax-paying medical facilities in the county. I find no merit in this argument. While appellees state that at least fifty percent of the physicians in the area are housed in buildings in competition with the Hospital's office building, appellees do not tell us how many of those physicians provide charity care at the Hospital, or whether those physicians were recruited to the area by the Hospital to deliver needed care to the County's citizens.

I believe the trial court erred in interpreting the law, and clearly reached the wrong conclusion on the evidence presented in this case. I would also reverse the court under principles that we established in another context, the use of municipal bonds and tax exemptions to attract industry to our state. In *Wayland v. Snapp*, 232 Ark. 57, 334 S.W.2d 633 (1960), we held that the profits made by a private manufacturing plant constructed on public lands using tax-exempt bonds did not invalidate the public policy of providing employment opportunities, and therefore met the constitutional exemption from ad valorem taxes.

The appellants in that case challenged the manufacturing plant's tax exemption as "contrary to Article 16, sections 5 and 6 of the Arkansas Constitution." *Id.* at 61, 334 S.W.2d at 636. In disposing of this argument, we held:

> As we understand the above provisions of the Constitution, for property to be exempted from taxation two elements must be present: (a) the subject property must be "public property", that is, it must be owned [in this instance] by the City of Batesville; (b) it must be used exclusively for public purposes. In our opinion both of these elements are present . . . . Any benefit [the manufacturer] may receive from this entire undertaking will be entirely incidental it seems to us.

*Id.* at 72, 334 S.W.2d at 641. *Wayland* tells us that the exclusive public use that justifies the tax exemption is determined by the public benefit of the entire project, not just the subtenant's use.

Here, as in *Wayland*, the exclusive public use is to provide needed medical care to the citizens of Crittenden County. These citizens would suffer an important detrimental loss without this tax-exempt undertaking.

For sixteen years, Crittenden County honored its agreement not to seek or impose ad valorem taxes on the improved property, the use and purpose of which has not changed. We need not rely, however, on principles addressing the question of estoppel in concluding that the actions of the Tax Assessor should be reversed on the basis of the reasons stated in this dissent.

CORBIN, J. joins.