Cite as 2020 Ark. 399

# SUPREME COURT OF ARKANSAS
No. CV–20–247

|  |  |
|---|---|
| CITY OF LITTLE ROCK AND LITTLE ROCK MUNICIPAL AIRPORT COMMISSION<br><br>APPELLANTS<br><br>V.<br><br>PULASKI COUNTY ASSESSOR JANET TROUTMAN WARD<br><br>APPELLEE | **Opinion Delivered:** December 3, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-18-2031]<br><br>HONORABLE ALICE S. GRAY, JUDGE<br><br>REVERSED. |

**RHONDA K. WOOD, Associate Justice**

The City of Little Rock and the Little Rock Municipal Airport Commission (together, Airport) appeal the circuit court's order affirming the Pulaski County Assessor's denial of its tax exemption for three land parcels. Because the Airport used these unleased properties exclusively for public purposes, they are exempt from taxation. We reverse.

## I. *Facts and Procedural Background*

This dispute involves the taxation of three Airport-owned properties: the Hawker Facility, the Carrier Facility, and the Southwest Facility. The Hawker Facility, located within the secure airfield, comprises an office building and five hangars. During the 2014 and 2015 tax years, the entire Hawker Facility was unleased. In the 2016 and 2017 tax years, portions of the property were leased. The Carrier Facility and the Southwest Facility sit adjacent to the Airport's secure airfield. Intermittently, the Airport leased the Carrier Facility

and the Southwest Facility to private entities, but, during the tax periods at issue, they were wholly unleased.

In 2016, the Assessor denied the Airport's application for tax exemptions. The Airport appealed the denial to the Pulaski County Court. The Airport filed four amended complaints, and the Assessor filed an answer to each of the complaints, except the fourth amended complaint. Following a hearing, the county court ruled in favor of the Airport and concluded the properties were tax exempt. The Assessor appealed the decision to the Pulaski County Circuit Court.

At the circuit court, the Airport filed a "motion to dismiss or for default judgment." The circuit court denied the motion to dismiss but granted the default judgment as to the fourth amended complaint. The parties then filed cross-motions for summary judgment. The circuit court granted the Assessor's motion for summary judgment, concluding that the properties were not exempt, and it denied the Airport's motion for summary judgment. The Airport appealed.

## II. *Jurisdiction*

First, the Airport argues the circuit court lacked jurisdiction because the Assessor failed to perfect her appeal from county court to circuit court. It asserts the circuit court did not acquire jurisdiction over the county court appeal because the Assessor failed to file an answer in the circuit court within thirty days. The Assessor responds that she perfected her appeal when she timely filed a certified copy of the county court proceedings, including certified copies of the complaint and the judgment, with her notice of appeal.

Arkansas District Court Rule 9 governs appeals from county court to circuit court. According to Rule 9, an appeal is perfected when litigants comply with subsections (a) and (b). *Taylor v. Biba*, 2014 Ark. 22, at 5. These subsections require timely filing a certified copy of the county court record or docket sheet and a certified copy of the complaint. *Id*. Subsection (c) dictates the procedure after the appeal is perfected and the circuit court attains jurisdiction. *Id*. It states,

> Within 30 days after a party serves . . . certified copies of the district court docket sheet or district court record and a certified copy of the district court complaint . . . the party who was the defendant in district court shall file its answer, motions, and claims within the time and manner prescribed by the Arkansas Rules of Civil Procedure.

*Id*. Interpreting this rule as anything other than procedural would permit an appellee-defendant to deprive a circuit court of jurisdiction by simply not filing an answer. Our conclusion is the Assessor's failure to file an answer and comply with subsection (c) was a procedural error, not a jurisdictional one. *See Circle D Contractors, Inc. v. Bartlett*, 2013 Ark. 131. And it did not deprive the circuit court of jurisdiction.[1]

### III. *Tax Exemption*

The issue here is whether the Airport qualified for a public-purpose exemption during the periods the property was unleased. In analyzing this issue, we apply the relevant law regarding summary judgment and tax exemptions. A court should grant summary judgment when it is clear no genuine issue of material fact remains for litigation. *See Pledger*

---

[1]A plaintiff's remedy when a defendant fails to file an answer is a default judgment. Ark. R. Civ. P. 55(a). Here, the Airport filed for judgment by default, which the circuit court in its discretion denied except as to the new allegations contained in the fourth amended complaint. Neither party appeals the circuit court's split decision on the motion for default judgment, and therefore, we do not review it.

*v. Mid-State Constr. & Materials, Inc.*, 325 Ark. 388, 925 S.W.2d 412 (1996). On appellate review, this court must only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Id.*

We have consistently held that taxation is the rule and exemption the exception. *Ark. Teacher Ret. Sys. v. Short*, 2011 Ark. 263, 381 S.W.3d 834. We therefore construe tax exemptions strictly against the exemption. *Short*, 2011 Ark. 263, at 5–6, 381 S.W.3d at 837. We presume the taxing power of the state. *Id.* On appeal, we review tax cases de novo, setting aside the findings of fact by the circuit court only if clearly erroneous. *Short*, 2011 Ark. 263, at 6, 381 S.W.3d at 837.

The Arkansas Constitution provides that "public property used exclusively for public purposes . . . shall be exempt from taxation." Ark. Const. art. 16, § 5(b). Thus, for property to be tax exempt it must be (1) "public property" and (2) used exclusively for public purposes. The parties agree that the property at issue was publicly owned. They disagree whether the Airport used the property exclusively for a public purpose, as the constitutional exemption requires.

Our law is clear that publicly held land that is leased for profit is not "used exclusively for public purposes" and is therefore subject to taxation. *See Sch. Dist. of Ft. Smith v. Howe*, 62 Ark. 481, 37 S.W. 717 (1896); *Short*, 2011 Ark. 263, 381 S.W.3d 834. To be exempt, this court has looked to whether the "actual and direct use" was for a public purpose. *Brodie v. Fitzgerald*, 57 Ark. 445, 22 S.W. 29 (1893); *Crittenden Hosp. Ass'n v. Bd. of Equalization of Crittenden Cty.*, 330 Ark. 767, 772, 958 S.W.2d 512, 514 (1997) ("[T]he determining

4

factor for tax-exemption purposes is the actual use to which the property is put."); *City of Fayetteville v. Phillips*, 306 Ark. 87, 93, 811 S.W.2d 308, 312 (1991) (noting that our decisions turn on "actual and direct use"). Whether the property is actually and directly used for a public purpose depends on the context. *Compare Burgess v. Four States Memorial Hosp.*, 250 Ark. 485, 465 S.W.2d 693 (1971) (noting that a hospital may be exempt from taxation if it is open to the general public, if its services are not refused for inability to pay, and if all profits support hospital maintenance and extending its charitable purpose) *with Hilger v. Harding College, Inc.*, 231 Ark. 686, 331 S.W.2d 851 (1960) (considering whether teachers were employed, courses taught, or school credits given for work performed in a university-owned printing press, laundry, and dairy).

The Airport relies on two cases to bolster its position, but neither case is on point to the issue presented here. *See Robinson v. Ind. & Ark. Lumber & Mfg. Co.*, 128 Ark. 550 (1917); *Pulaski Cty. v. Carriage Creek Prop. Owners Improvement Dist. No. 639*, 319 Ark. 12, 888 S.W.2d 652 (1994). In *Robinson* and *Carriage Creek*, the issue was whether properties obtained through foreclosure for failure to pay tax assessments were exempt. In both cases, we concluded that the land was exempt because it was not held for any proprietary purposes but was held in its government capacity to recover delinquent taxes. *Id.*

We do not find *Robinson* and *Carriage Creek* applicable here because, in those cases, the government entities' land ownership was brief and limited. In neither case did the entities intend to retain the properties indefinitely. Here, unquestionably, the Airport purchased the properties for long-term use and periodically leased the properties to private businesses. The Airport does not argue the exemptions apply during the periods of active

5

leasing. Instead, the issue is whether a government entity's ownership of unleased property while it pursues a private lease can constitute an exclusive public purpose. We hold that it can, and we reverse because the unrefuted evidence showed that the Airport utilized the properties in a manner that served an exclusive public purpose during the unleased periods.[2]

As to the Hawker Facility, the Airport introduced evidence that when the property was unleased, it used the space to store and stage equipment such as snow brooms, bulldozers, and trucks used to clear the runways during snow and ice events. The Airport must clear its primary runway first, and that runway was closest to the Hawker Facility. According to testimony from Airport employees, storing the equipment near the runway is "a big advantage to the airport being able to respond to [a] snow or ice event." Additionally, the Hawker Facility served a public purpose by storing a historical plane owned by the Airport and by housing offices for the Little Rock Police Department. The Assessor did not refute the testimony of the Airport's exclusive public use of the Hawker Facility while it was unleased. In fact, it admitted there were no private uses at any of the sites during the unleased periods.[3]

The Airport also offered unrefuted evidence that it purchased the Carrier and Southwest Facilities for the public purpose of maintaining a buffer around the Airport. Specifically, Greg Garner, the Airport's manager of business and properties, testified that the

---

[2]Appellants contend Hawker's prior Act 9 status provides the public use. However, because we conclude an alternative public use exists, we do not reach this issue.

[3]Although portions of the Hawker Facility were leased during 2016 and 2017, the witness from the Assessor's office testified that if the court concluded that the unleased property served a public purpose, only the leased portions could be taxed on a pro rata basis.

Airport needed to control the development and use of these properties to keep them compatible with airport use and to comply with FAA grant assurances. In his opinion, the best way to control the use of land around the airport is to own the land. The Airport's public purpose of owning the buffering land was to prevent height enhancements, radio interference, and glares that would disrupt the aeronautical activities of the airport.

The Assessor also failed to refute this evidence. In fact, the Assessor's director of operations testified that the FAA regulations "certainly create or support a public purpose behind the acquisition and ownership of the land." Thus, the uncontroverted evidence presented was that the Airport's current and actual purpose of owning these properties was to maintain a buffer, which adheres to FAA regulations and furthers aeronautical activities and safety. We therefore conclude that the Southwest and Carrier Facilities were used exclusively for a public purpose and qualified for a tax exemption.

We reverse the circuit court's order. The uncontroverted evidence was that the Airport directly used the subject properties exclusively for public purposes when the properties were unleased. The Hawker Facility is exempt for tax years 2014 and 2015 when it was unleased. During tax years 2016 and 2017, the leased portions are taxable on a pro rata basis. The Carrier and Southwest Facilities are exempt during the periods when they were unleased.

Reversed.

HART and WOMACK, JJ., concur.

**JOSEPHINE LINKER HART, Justice, concurring.** I agree that the circuit court had jurisdiction and that this case should be reversed. Regarding the latter, I have a different

7

rationale for my decision. In my view, when real property is owned by a municipality, the concept of "used exclusively for a public purposes" is in effect the default condition—all use is public use, unless something occurs to change the property from public to private.

Where municipal property is concerned, use may be only public *or* private. Such factors as the length of time a municipality intends to own the property or whether it parks a snowplow in a building that is affixed to the land is really not the proper inquiry. A municipal swimming pool may be filled with water and used for swimming only three months out of the year. That does not mean that the nine months of nonuse would make the property taxable. That is because the swimming pool remains public property. Accordingly, in my view, the test needs to focus on whether there has been an event that recharacterizes the use of the property. Such an event includes the leasing of the property to a private entity. Leaseholds give the lessee exclusive possessory interest in the property. The lessee is not obligated to use the property in any particular way to make it private property—and subject to taxation—for the duration of the lease.

My analysis has brought me to the same disposition as the majority, *in this case*. However, to my mind, it is not in the public's best interest to plunge the municipal airport back into litigation if it decides to move the snowplow and the historic airplane.

I concur.

WOMACK, J., joins.

*Thomas M. Carpenter*, *Rick D. Hogan*, and *Caleb Garcia*, Office of the City Attorney, for appellant City of Little Rock;

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant Little Rock Municipal Airport Commission.

*Meagan E. Davis* and *Adam B. Fogleman*, Pulaski County Attorney's Office, for appellee.